EAGLE v. NOWLIN, Collector.

(District Court, D. Indiana. May 29, 1899.)

No. 5,873.

INTERNAL REVENUE—TAX ON OLEOMARGARINE—DEALERS—KNOWLEDGE.

Under 1 Supp. Rev. St. p. 505, § 3, providing that "retail dealers in oleomargarine shall pay" a certain tax, and that "every person who sells oleomargarine" in specified quantities is a retail dealer, such a dealer is liable to the tax, though he honestly believed that what he bought and sold was butter.

This is an action brought by the plaintiff against the defendant, as collector of internal revenue, to recover the amount of a tax assessed against, and collected from, the plaintiff, as a retail dealer in oleomargarine, by the defendant. The plaintiff insisted that he was not liable to the tax, and paid the same to the collector under protest. The case was, by agreement, submitted to the court for trial on the following agreed statement of facts:

"The plaintiff, John H. Eagle, is a grocer in the city of Indianapolis, Ind., doing business at No. 624 North Delaware street. That said John H. Eagle bought of the Three Friends Creamery what was sold by said company as creamery butter, and sold the same to the trade generally, believing at the time that it was creamery butter. That he handled these goods for a period of 11 months, beginning with August, 1897. That it was discovered by the revenue officers that the said Three Friends Creamery was manufacturing oleomargarine in violation of law, and that the goods bought by said John H. Eagle, and sold as creamery butter, were in fact oleomargarine. That the commissioner of internal revenue thereupon assessed a tax of $44 and a penalty of $22 against him as a retail dealer in oleomargarine, and the revenue collector notified him, the said Eagle, that such assessment had been made, and must be paid within 10 days. Mr. Eagle asked for time to present application for abatement of tax and penalty to the commissioner of internal revenue, which time was

granted. On this application and proof offered, the commissioner abated the penalty, but ordered the collection of the tax, $44, which was paid by Mr. Eagle under protest; he having filed the usual return for special tax on Form 11, a copy of which is hereto attached, marked in red ink 'Copy.' This was also filed under protest by Mr. Eagle. He also appealed to the commissioner of internal revenue from said assessment and payment thereof, which appeal was overruled. It is agreed that he did sell, at retail, oleomargarine, but it is also agreed that he did not know at the time it was oleomargarine. It is also agreed that he made no special effort to inform himself as to whether it was oleomargarine or creamery butter. It is also agreed that he had no special tax stamp at the time, nor had he paid any special tax, as a retail dealer in oleomargarine. That the defendant collected the amount, $44, as the revenue collector of the Sixth district, and not otherwise. That it was paid by the plaintiff after time had been given to him to present the matter to the commissioner of internal revenue, and after the hearing of his complaint, and the abatement of the penalty of 50 per cent., and that he appealed from said assessment of tax against him, which was also heard and overruled, after which this suit was brought, and is now pending, to recover the said sum of $44 so paid."

The statute under which the tax was assessed and collected reads:

"Retail dealers in oleomargarine shall pay forty-eight dollars. Every person who sells oleomargarine in less quantities than ten pounds at one time shall be regarded as a retail dealer in oleomargarine." 1 Supp. Rev. St. U. S. p. 505, § 3.

Frank B. Burke, for plaintiff.
A. W. Wishard and J. J. M. La Follette, for defendant.

BAKER, District Judge (after stating the facts as above). The contention of the plaintiff is that having in good faith, and without fault or negligence, purchased the oleomargarine as creamery butter, and having sold the same in like good faith, without fault or negligence, he is not liable to the tax. The statute is a revenue regulation, operating incidentally for the protection of the public health, and the congress regarded the dealing in oleomargarine as a suitable subject for the imposition of a tax. In the absence of the statute, dealing in oleomargarine would be as legitimate as dealing in any other harmless commodity. The statute is not aimed at dealing in oleomargarine as an act which is immoral or malum in se, but as one which is made malum prohibitum, in aid of the revenue, except upon payment of the prescribed tax. It does not make knowledge on the part of the dealer an ingredient in his liability to pay the tax; nor ought the court to import, by construction, such an ingredient into it. If a person deals in oleomargarine, without regard to the question of motive or knowledge, he becomes liable to the tax. The principle on which this doctrine is grounded is well stated in 3 Greenl. Ev. § 21, where it is said:

"Ignorance or mistake of fact may, in some cases, be admitted as an excuse. But where the statute commands that an act be done or omitted, which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute, it seems, will not excuse its violation. Thus, for example, where the law enacts the forfeiture of a ship having smuggled goods on board, and such goods are secreted on board by some of the crew, the owner and officers being alike innocently ignorant of the fact, yet the forfeiture is incurred notwithstanding their ignorance. Such is also the case in regard to many other fiscal, police, and other laws and regulations, for the mere violation of which, irrespective

of the motives or knowledge of the party, certain penalties are enacted; for the law in these cases seems to bind the party to know the facts and to obey the law at his peril."

A brief review of some of the cases will show that where the statute commands that an act be done or omitted which, in the absence of such statute, might have been lawfully done or omitted, ignorance of the fact or state of things contemplated by the statute will not excuse its violation.

The case of Reg. v. Woodrow, 15 Mees. & W. 404, was an information for the recovery of a penalty brought by William Hedges, an officer of the excise, against Woodrow, a licensed dealer in tobacco by retail, for having in his possession adulterated tobacco, contrary to an act of parliament. The action was brought under the third section of 5 & 6 Vict. c. 93, § 3, which provided as follows:

"That every manufacturer of, dealer in, or retailer of tobacco, who shall receive or take into or have in his possession, or who shall sell, send out, or deliver any tobacco or snuff which shall have been manufactured with, or shall have added thereto or mixed therewith, or into or amongst which there shall have been put, either before or after being manufactured, or in which there shall be found on examination thereof any other material, liquid, substance, matter or thing, than, as respects tobacco, water only, shall forfeit two hundred pounds."

The case stated for the judgment of the court was that the defendant had purchased the tobacco of a manufacturer as genuine tobacco, and believed that the tobacco so purchased was genuine, and that he had no knowledge nor cause to suspect that the tobacco he so purchased, and which was seized, had any substance, matter, or thing added to or mixed therewith prohibited by the statute, or that it had been manufactured in any other way than as directed by law. It was strenuously insisted by counsel for the defendant that he could not be held liable for having in his possession the adulterated tobacco because he was ignorant of that fact, and that such ignorance did not arise from any fault or negligence on his part. The court, however, was unanimously of the opinion that the respondent was liable for the penalty imposed by the statute. Counsel insisted that the degree of care on the part of the purchaser prescribed by the court would require a nice chemical analysis. To this Parke, B., responded:

"You must get some one to make that nice chemical analysis, or you must rely on the manufacturer and dealer who sells to you, and take your remedy against him. You may take a warranty from him that it is lawful tobacco. There are very ample reasons for these provisions of the act, on account of the difficulty of convicting in such cases."

It was further said by Parke, B., in the course of his opinion:

"It is very true that in particular instances it may produce mischief because an innocent man may suffer from the want of care in not examining the tobacco he has received, and in not taking a warranty, but the public inconvenience would be much greater if in every case the officer were obliged to prove knowledge. They would be very seldom able to do so. The legislature have made a stringent provision for the purpose of protecting the revenue, and have used very plain words."

The case of Beckham v. Nacke, 56 Mo. 546, was a qui tam action brought by the plaintiff against the defendant, who was a justice

of the peace, for the penalty imposed by statute for joining in marriage her minor son without her consent. The action was founded on the sixth section of the marriage act (2 Wag. St. p. 930), which provided that:

"If any such person shall join in marriage any minor without the written certificate of consent under the hand of the parent, guardian or other person under whose care and government the minor may be, or the presence and consent of the parent," etc., "such person shall forfeit $300 to be recovered with costs of suit by civil action in any court having cognizance, by the parent, guardian or person having charge of such minor; the one-half of such penalty to the use of the county, and the other half for the use of the person who shall prosecute for the same."

The justice defended on the ground that he was honestly mistaken in respect to the age of the minor, in good faith believing that he was at the time of full age. The court held, without dissent, that it was not sufficient that he acted under the bona fide belief that such minor was of full age; that his honest mistake in that regard would not protect him. This case goes upon the principle that an honest mistake of fact will not relieve from the penal consequences of the statute.

The case of Com. v. Boynton, 2 Allen, 160, was an indictment against the defendant for being a common seller of intoxicating liquor. On the trial, after certain sales of beer had been testified to, the defendant offered evidence to prove that the article sold was not intoxicating, and that if it were so he had no reason to suppose that it was intoxicating, and bought it for beer, which was not intoxicating, and did not believe it to be intoxicating. The court below instructed the jury that, if the defendant sold liquor which was in fact intoxicating, he might be found guilty, although he did not know or suppose that it was intoxicating. The defendant was convicted, and alleged exceptions. The supreme court overruled the exceptions, holding that the charge of the court below was correct. The court said:

"The salutary rule that every man is conclusively presumed to know the law is sometimes productive of hardship in particular cases; and the hardship is no greater where the law imposes the duty to ascertain a fact."

The court held that it was the duty of the defendant to ascertain the fact for himself whether the beer which he sold was intoxicating or not.

The case of Com. v. Farren, 9 Allen, 489, was an indictment upon St. 1864, c. 122, § 4, which provides, among other things, that whoever sells or keeps or offers for sale adulterated milk, or milk to which water or any foreign substance has been added, shall be punished by a fine, as therein provided. The defendant contended that the commonwealth should have been held to prove on the trial that he committed the offense knowing the milk to be adulterated. The supreme court held that the statute did not require such proof, and that it was evident that the legislature did not intend that it should be so. It was held that the statute was a police regulation for the security of the public health, and that it was important that the community should be protected against frauds, which were then practiced so extensively and skillfully in the adulteration of articles of

diet in common use by the people.    It was adjudged that, although the defendant did not know that the milk which he sold was adulterated, he was still liable to the penalty, and that he was bound, at his peril, to ascertain whether the milk was pure or adulterated.    The case of Com. v. Waite, 11 Allen, 264, announces the same doctrine.

The case of Com. v. Raymond, 97 Mass. 567, was an indictment charging the defendant with having knowingly, willfully, and maliciously killed a certain calf, which was less than four weeks old, with intent then and there the meat of said calf to sell, contrary to the statute.    The court said:

"The defendant is charged with an offense under the first clause of section 1, c. 253, St. 1866, by which it is made punishable to kill a calf less than four weeks old for the purpose of sale.    It was not necessary to allege in the indictment that he knew the calf to be less than four weeks old.    Under this clause, as under the laws against the sale of intoxicating liquor or adulterated milk, and many police, health, and revenue regulations, the defendant is bound to know the facts and obey the law at his peril.    Such is the general rule where acts which are not mala in se are made mala prohibita from motives of public policy, and not because of their moral turpitude or the criminal intent with which they are committed."

The case of State v. Hartfiel, 24 Wis. 60, was an indictment for selling spirituous liquor to a minor in violation of the statute.    The defendant introduced evidence to show that he believed, in good faith, that the minor to whom he made the sale was of age.    The court below instructed the jury that ignorance as to the fact that the person to whom the sale was made was a minor was no defense.    The defendant was convicted, and appealed to the supreme court, where it was held that, although the defendant did not know or suspect that the purchaser was a minor, he was nevertheless properly convicted. The court held that where the statute commands an act to be done or omitted, which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute constitutes no excuse for its violation.

The statute in question is a revenue regulation, and I entertain no doubt that the congress intended to require the payment of the tax, irrespective of the knowledge or motive of the person who deals in oleomargarine.    Indeed, if this were not so, it is plain that the statute might be easily evaded and violated times without number, to the great and irremediable loss of the revenue.    Any other construction would practically emasculate the operation of the statute, and defeat the accomplishment of the purpose aimed at in its enactment.    The dealer in butter is bound to ascertain and know whether he is dealing in genuine butter or oleomargarine, and to obey the law, at his peril.

It results that there must be judgment for the defendant.    So ordered.