No. 11,761.

## The Cincinnati, Indianapolis, St. Louis and Chicago Railway Company v. Gaines.

PLEADING.—*Complaint Charging Negligence.*—*Motion to Make More Specific.*— *Practice.*—An objection that the averments of a complaint charging negligence are not sufficiently specific, must be taken by a motion to make more specific. It is not a cause for demurrer.

RAILROAD.—*Action for Personal Injury.*—*Negligence.*—*Contributory Negligence.*—*Pleading.*—A complaint against a railroad company, alleging that the defendant's train approached a highway crossing without giving the required statutory signals and without the plaintiff's knowledge, whereby his team was frightened and ran away, and the plaintiff, without any fault on his part, was injured, sufficiently rebuts any presumption of contributory negligence.

SAME.—*Highway Crossing.*—*Sounding Whistle.*—*Injury by Frightened Team.*— Where a railroad track crosses a highway by an overhead bridge and the plaintiff's team passing beneath, without the knowledge of those in charge of the train passing above, is frightened by the sounding of the whistle and runs away, whereby the plaintiff is injured, the company,

The Cincinnati, Indianapolis, St. Louis and Chicago R. W. Co. v. Gaines.

in the absence of any showing that the whistling was unnecessary, is not liable, although the crossing was known to be one of extraordinary danger.

SAME.—*Sounding Whistle at Place of Extraordinary Danger not Negligence Per Se.—Burden of Proof.*—The mere sounding of a locomotive whistle, even at a place of extraordinary danger, where teams are likely to be frightened thereby, is not of itself negligence, and to justify an inference of negligence from such act the party having the burden of the issue must show that it was done under such circumstances as made it at that time negligent.

SPECIAL FINDING.—*Silence as to Material Fact.—Presumption.*—Where a special finding is silent as to a fact, the existence of which is necessary to make out the plaintiff's case, the presumption will be that such fact did not exist.

SUPREME COURT.—*Unavailable Error.—Practice.*—Where it affirmatively appears that the judgment rests on a good paragraph of complaint, it will not be reversed because of an error in overruling a demurrer to a bad paragraph.

From the Tippecanoe Circuit Court.

*J. R. Coffroth* and *T. A. Stuart*, for appellant.

*B. W. Langdon* and *T. F. Gaylord*, for appellee.

MITCHELL, J.—This action was brought by John W. Gaines against the Cincinnati, Indianapolis, St. Louis and Chicago Railway Company, and another railway company, whose line the appellant was operating, to recover for injuries alleged to have been sustained by the plaintiff in consequence of the careless and negligent running of a train by the appellant, and in failing to observe the statutory obligation imposed on those operating locomotive engines on railways, in respect of the approach to highway crossings.

The complaint is in two paragraphs. The first seeks a recovery for an injury upon the common law liability for negligence; while the second is grounded upon the right to recover for an injury occasioned by a failure to observe a statutory duty.

The wrong of which complaint is made in the first paragraph is, that while the plaintiff, with his team and wagon, was lawfully proceeding along a public highway or street,

where it approaches and is crossed by the defendant's railway, the defendant carelessly and negligently caused a locomotive engine, with a train of cars attached, to approach and pass over the crossing, and that, by reason thereof, the plaintiff's team, without fault on his part, or that of his servant who was driving, took fright, became unmanageable, and ran away with the wagon, from which he was thrown with such violence that he sustained grievous injury to his person.

In the second paragraph it is charged that the plaintiff was proceeding along the highway in the manner stated, when the defendant caused a locomotive engine, with a train of cars attached, to approach the street crossing without sounding the whistle and ringing the bell, according to the statute in such cases made and provided, by reason whereof both plaintiff, and his servant who was driving, were unaware of the approach of the train; that the team took fright, became unmanageable, etc., and the plaintiff was, without fault, injured as stated.

It is contended that neither paragraph states a cause of action, and that the court committed error in overruling demurrers filed to each.

The only infirmity which is claimed, as pertaining to the first paragraph, is, that it fails to specify in what the defendant's carelessness and negligence consisted.

While the statements in the paragraph under consideration are, as was said in *City of Evansville* v. *Worthington*, 97 Ind. 282, too general to commend it as a model of good pleading, it is nevertheless settled that objection for that cause can only be taken by a motion to make more specific; it is not ground for demurrer. *Ohio, etc., R. W. Co.* v. *Collarn*, 73 Ind. 261 (38 Am. R. 134); *Cleveland, etc., R. W. Co.* v. *Wynant*, 100 Ind. 160.

Concerning the second paragraph it is sufficient to say that while we concede the proposition as contended for by counsel, that a statute which requires certain signals to be given as a train approaches a highway crossing, and which makes a

railway company liable for all damages occasioned by a failure to give such signals, has no application to a case where the person injured was guilty of contributory negligence, we are nevertheless of the opinion that the averments of this paragraph are such as to rebut any presumption of contributory fault. Moreover, we think the contention of the appellee that the special findings affirmatively show that the conclusions of law and judgment of the court rest on the first paragraph of the complaint is well made. In that view of the case a reversal would not follow, even if it should have been held that the second paragraph was insufficient. *Martin* v. *Cauble*, 72 Ind. 67; *Smith* v. *McKean*, 99 Ind. 101.

Upon request the court found the facts specially, and stated its conclusions of law thereon. The manner in which the track crosses the highway, the cautionary signs provided, the speed at which trains usually run in crossing, and the situation and conformation of the grounds surrounding the crossing and approaches to it, are exhibited in detail in the findings.

It was found that the crossing was one that was much used by the passing teams and vehicles, was of extraordinary danger, that accidents had frequently happened there before within the defendant's knowledge, and that the usual statutory signals were not always sufficient warning to notify the public using the highway of the approach of trains. The railway track crossed the highway by an overhead bridge, fifteen feet above the highway, the passage way for teams underneath being a space about twelve feet in width.

Trains approaching from the west were not visible to persons on the highway coming from the north, except at a point about one hundred and eighty feet distant from the crossing, and not then until such trains reached a point not farther than forty feet from the bridge. The "whistling post" for trains approaching from the west was a fraction over thirteen hundred and thirty feet westerly from the crossing. On the 20th day of October, 1882, the plaintiff,

The Cincinnati, Indianapolis, St. Louis and Chicago R. W. Co. v. Gaines.

with his two sons, was returning from the city of Lafayette to his home, seated in a farm wagon, which was drawn by a mule team driven by one of the sons. The team approached the crossing from the north-east upon a slow trot, the wagon making considerable noise, the plaintiff being at the time engaged in conversation with a neighbor who had been invited to a seat in the wagon. The wind was blowing moderately from the south-west, and the weather was clear and pleasant. It was about 4 o'clock P. M. It is found that under ordinary conditions the sound of the whistle on an engine could be heard from a point over a half mile west of the crossing, and the ringing of the bell, the roar and noise of the train coming over the track, could be heard a quarter of a mile distant. At a point from one hundred and eighty to one hundred and eighty-five feet from the crossing the team was stopped for the space of a few seconds for the purpose of looking and listening for the train, the plaintiff knowing that it was about time for the arrival of the regular passenger train, which was three or four minutes late. The occupants of the wagon hearing no signal or other indication of an approaching engine and train, the driver, by direction of the plaintiff, whipped the team into a brisk trot and passed to the railroad crossing at the rate of about six miles an hour. This is found by the court to have been a proper rate of speed under the circumstances. While the plaintiff was thus occupied, an engine with a passenger train attached was coming from the west, over the defendant's line, at the rate of about eighteen miles an hour. When the engine arrived at the whistling post the engineer gave one "long blast" from the whistle, lasting five or six seconds, the fireman at the same time ringing the bell, which was rung continuously until the crossing was passed. The team and the engine reached the crossing about the same time, and while the wagon was under the bridge, and the engine passing above, the whistle on the engine was sounded, the persons in charge of the engine being unable to see teams when so near

as plaintiff was, and having no knowledge of the presence of the passing team below. It is found that the mules were frightened by the sound of the whistle, the noise and smoke of the train, and that this was the sole cause of their fright. They became unmanageable, ran away with the wagon, which was overturned and the plaintiff thrown upon the ground with such violence as to sustain grievous and permanent injury in his person. The extent, nature and severity of the injury are described. Concluding its finding of facts, the substance of which is above set out, the court makes an inference of fact as follows:

"And it is further found as an inference of fact that said plaintiff received and suffered said injuries without any fault or negligence on his part or on the part of his son who was driving said team at the time said injuries were received, and that the defendant, the Cincinnati, Indianapolis, St. Louis and Chicago Railway Company, was guilty of negligence in running its said engine and train of cars over said crossing over said highway, and thereby negligently frightened the team of the plaintiff and thereby caused the said injuries to the plaintiff."

The conclusion of law stated as to the appellee is as follows: "And I further find that the defendant, the Cincinnati, Indianapolis, St. Louis and Chicago Railway Company, is liable upon the facts hereinbefore found, and therefore I find for the plaintiff, and against said defendant, the Cincinnati, Indianapolis, St. Louis and Chicago Railway Company, and assess the plaintiff's damages at eight thousand dollars."

The appellant excepted to the conclusions of law, upon the facts found, and upon this exception is presented the first question for consideration: Do the facts found justify the inference that the railway company was guilty of negligence? The case is in some respects different from that ordinarily presented in which the conduct of persons operating railway trains, and persons travelling over grade crossings on public highways are involved. Since the railway here concerned crossed

over the highway on its own bridge, so as to present no ob-
struction against the use of the highway, those operating
trains over it were required to observe precisely the same
care in doing so in respect of travellers on the highway at the
crossing that was required at other places of equal danger.
The single exception to this was, that the statute imposed
upon those operating trains the duty of giving timely warn-
ing of the approach of engines by specified signals.   The sig-
nals having been duly made, so that no negligence was predi-
cated upon a failure to comply with its duty in that regard,
the conduct of the appellant, as it is exhibited in the special
findings, must be considered in all respects the same as if
the highway along which the plaintiff was proceeding had lain
parallel with, and in such close proximity to, the railway as to
have presented a situation of extraordinary danger.   Whether
it was negligent or not must depend upon the conduct of
those operating its train, considered with reference to the
danger incident to the situation, and the facts of which they
had or were bound to take notice.

The only substantive act upon which negligence is predi-
cated is, that when the locomotive entered upon the bridge
the whistle was sounded.   It is not found that the sounding of
the whistle was unnecessary or in any respect improper, and
we must, therefore, presume there was lawful occasion for it.
It is expressly found that those in control of the engine had
no knowledge of the presence of the plaintiff or of his team,
and the facts found show that in the situation in which they
were, no reasonable diligence would have discovered them to
the persons operating the train.   It is also specifically found
that the sole cause of the fright of the team was the sound-
ing of the whistle and the noise and smoke of the train.

That the appellant was in the exercise of a lawful right in
crossing its train over the bridge is not disputed.   That the
entrance of the locomotive upon the bridge under which the
plaintiff was passing was attended with noise and smoke,
was of course unavoidable, and thus the rule which requires

us, in the absence of a finding to the contrary, to indulge the presumption that the sounding of the whistle was, from some cause, a proper and necessary thing to be done, results in the conclusion that the team was frightened from causes that were unavoidable and conduct that was necessary and proper. Unless, therefore, it can be held that, because the place at which the whistle was sounded was one of extraordinary danger, the mere fact that it was sounded without regard to the occasion for so doing, was negligence *per se*, the fact of negligence, inferred by the learned judge who tried the cause, would seem to be without support.

Upon well settled principles and upon the authority of cases forming a class to which this is allied, we think an inference of negligence can not be justified on the hypothesis stated. That the juncture of affairs at the point where the accident happened produced a situation of extraordinary danger, was not blamable to the appellant; that there are such places is one of the necessary incidents to the existence and operation of railways; that such a place existed did not affect either the right of the railway to use its line in any lawful manner, or of the plaintiff to proceed along the highway. Each, however, was under the obligation so to use its own as not unnecessarily to interfere with the rights of the other. Courts take judicial knowledge of the fact that sounding the whistle is, under a variety of circumstances, a necessity. The statute requires it upon the approach of trains to all highways. It is a means of warning persons or animals off the track, and thus, perhaps, saving car loads of passengers from disaster. The danger to persons on an adjacent or intersecting highway must be known and imminent in order to excuse the giving of signals required by law, or which might be necessary to clear its track from trespassing animals, where there was a probability that they might by contact derail the train. On the other hand, if there was no occasion for blowing the whistle or making any other noise than that necessarily incident to the running of its train at a place where it

might reasonably be supposed that some one who could not be seen might be using a highway so situate as to make its use dangerous, sounding the whistle or making any other unnecessary noise might be the grossest negligence, and if a person on the highway was seen by those in charge of the engine, and the unnecessary sounding of the whistle might put him in peril, such conduct as that supposed 'might be little less than wanton and malicious.   But upon the facts as found, we can not know but that the engine was approaching another street crossing, and that the signal given was made in pursuance of the defendant's statutory duty, or it may have been necessary in order to clear the track of trespassing animals or to warn some one of the approach of the train.   " The mere sounding of the whistle can not be deemed negligence, although blown in close proximity to the highway, and even though there are horses in the immediate vicinity."   *Billman* v. *Indianapolis, etc., R. R. Co.,* 76 Ind. 166 (40 Am. R. 230).

In a case involving the principles we are considering it was said :   " It can not be questioned that defendant's train was rightfully on its track, and that the blowing of a whistle, and the letting off of steam with its attendant noise, are not *per se* acts of negligence, or evidence of wrongful conduct." *Culp* v. *Atchison, etc., R. R. Co.,* 17 Kan. 475. If the servants of the defendant were guilty of no improper conduct while exercising a lawful right, the fact that the plaintiff's team took fright at the sound of the whistle, the noise and smoke of the train, can not make it liable.   The liability, if any exists, must rest upon some heedless or unnecessary act which was likely to and did produce the fright of the team.

In the case of *Philadelphia, etc., R. R. Co.* v. *Stinger,* 78 Pa. St. 219, which is similar in many respects to the case under consideration, it is said, " the mere fact of whistling furnishes no presumption of negligence."   So in the case of *Favor* v. *Boston, etc., R. R. Co.,* 114 Mass. 350 (19 Am. R.

364.) Speaking of the obligation of railroad companies, under circumstances such as we are here considering, the court said: "It has the right to do lawful acts upon its own premises, and it is not responsible for injurious consequences that may arise from such acts, unless the acts are negligently and improperly done. If the defendants in this case had done some negligent act in the immediate vicinity of the highway, calculated to endanger the safety of travelers passing over it with horses, a very different question would have been presented."

We may say in this case, since it was found that the place was one of extraordinary danger, at which accidents were known to have occurred before, if it had been found that the team was frightened by the unnecessary or improper sounding of the whistle, a very different question would have been presented.

The plaintiff relies on the case of *Hill* v. *Portland, etc., R. R. Co.*, 55 Me. 438. In that case the engineer was in a situation to see the plaintiff and his horse before he sounded the whistle. Being so situate he sounded the whistle twice, that being the usual signal for the train to start. The court held that the signals thus given, although customary, were unnecessary.

The case of the *Pennsylvania R. R. Co.* v. *Barnett*, 59 Pa. St. 259, which is also relied on, does not support the appellee's contention. The railway company, in that case, was held liable because it approached a dangerous crossing without giving any warning. This was held to be negligence.

The statement in the last paragraph that the railway company "was guilty of negligence in running said engine and train over said crossing over said highway, and thereby negligently frightened the team," adds no force to the finding of facts. This is but a conclusion, and must rest for its support on the facts found. *Pittsburgh, etc., R. R. Co.* v. *Spencer*, 98 Ind. 186.

It results that upon the facts found by the court the infer-

ence that the defendant was negligent was not justified, and the conclusion of law should have been that the plaintiff was not guilty of negligence.

The judgment of the court is reversed with costs, with instructions to the court below to state conclusions of law on the facts found in accordance with this opinion, and to render judgment accordingly.

Filed Dec. 29, 1885.

### On Petition for a Rehearing.

Mitchell, J.—The argument of the learned counsel in support of the petition for a rehearing is directed to the maintenance of two propositions: *First.* That the court erred in assuming, in the principal opinion, that the special findings predicated no negligence upon the failure of the railroad company to comply with its statutory duty, as charged in the second paragraph of the complaint. *Second.* That we are in error in holding, in the absence of any finding to the contrary, that the presumption must be indulged that sounding the whistle by the engineer was in pursuance of some occasion rendering such conduct proper and necessary.

Respecting the first proposition, a careful re-examination of the special findings confirms us in the opinion that the liability of the defendant was not predicated upon the failure of the defendant to execute the signals required by law.

While the findings show that the signals were not given in exact conformity with the very letter of the statute, there appears to have been a substantial compliance with the law. Besides, there is no possible connection, near or remote, between the injury and the failure to give the signals in literal compliance with the statute, instead of the manner in which warning of the approaching train was given.

The finding is, that one " long blast," lasting five or six seconds, was given. The signal prescribed is, three distinct sounds of the whistle. The purpose in requiring signals is to give warning of the approach of trains. One " long

The Cincinnati, Indianapolis, St. Louis and Chicago R. W. Co. v. Gaines.

blast" occupied more time than would have been required to give double the number of distinct sounds prescribed by the statute. It probably made double the amount of noise. It could hardly be said, if six, instead of three, distinct blasts of the whistle had been given, that there was a failure to give the necessary warning by signalling the approach of the train.

The statutory warning must be given. If more than the statute requires is given, the railroad company may be liable to some one who is injured by the excess, but not for a failure to give the signals.

Upon the former hearing this second paragraph of the complaint, which it is now claimed the special finding supports, was subjected to criticism by opposing counsel as not being sufficient on demurrer. It was then said by counsel, who now insist that we fell into error in assuming that the special findings predicated no negligence on the failure to give the signals as charged in the second paragraph, that " the overruling of the demurrer to this paragraph, if erroneous, has become, by the events of the trial, immaterial and harmless, because the finding of the court is on the first paragraph." Counsel then proceeded in their argument to demonstrate the proposition above stated, and closed the discussion of this subject with the following pertinent and emphatic assertion: "The language of the learned judge who drew the finding is so explicit that there is no room for even a captious reader to doubt that the finding is bottomed wholly on the negligence of the appellant, as set forth in the first paragraph, as contradistinguished from the liability for a failure to comply with the statute."

Our own examination of the special findings, coupled with the vigorous argument of counsel, induced us to accept the view thus forcibly urged. Assuming that counsel have, for sufficient reasons to themselves, arrived at a different conclusion, our opinion in respect of the matter, nevertheless, is—

barring the imputation of captiousness—well expressed by the language quoted from their original brief.

As respects the second proposition, it is now contended, the special findings being silent upon the subject of the necessity or propriety of sounding the whistle when the engine came upon the bridge, which was in part the occasion of the fright of plaintiff's team, that the conclusion must be that it was unnecessarily and improperly sounded.

The action having been brought to recover damages for alleged negligence, it is of course not disputed that the burden of proving negligence was on the plaintiff. Nor is it claimed, as indeed upon reason and authority it could not be, that the mere sounding of the locomotive whistle is, ordinarily, negligence *per se.* The argument is, that because it is found that the whistle was sounded at a place of extraordinary danger, where teams were likely to be passing, and because the act of sounding it was likely to give fright to passing teams, therefore it must be presumed, from the mere finding that it was sounded, that it was wrongfully and negligently done.

At the former hearing we sought to maintain the proposition that because sounding the whistle was, under some circumstances, absolutely enjoined as a statutory requirement, and because the courts took judicial knowledge of the fact that, under other circumstances, it was an indispensable necessity to the running of trains, therefore the mere fact that the whistle was sounded was not of itself negligence. Unless it can be maintained that it was, the argument is at an end. If the act which the court finds contributed to the injury was not *per se* negligent, that is, was negligent or not, depending on whether there was a necessity for doing it, manifestly before an inference of negligence can arise from the mere doing of the act, it was incumbent on the party having the burden of the issue to show that the act was done under such circumstances as made it at that time negligent.

Where a special finding is silent as to a fact, the existence

The Cincinnati, Indianapolis, St. Louis and Chicago R. W. Co. v. Gaines.

of which is necessary to make out the plaintiff's case, the presumption will be the fact did not exist. This rule has been so often stated that we need not cite authorities in its support. To sustain the plaintiff's case, it was incumbent on him to prove that the defendant was guilty of negligence. The proof, as we must assume, went to such an extent as to enable the court to find nothing more than that the defendant did that for which, under some circumstances, the law imposes a penalty against its servants if the act which was done is omitted, besides making the company liable for all damages which result from its omission. Under other circumstances the court knows judicially that an indispensable necessity may require the doing of the act; whether doing the act was negligent or not depended upon the presence or absence of the conditions which, under pains and penalties, required it to be done, or the existence of any of the numerous circumstances which may have rendered it of the highest public concern that it should have been done. Upon these subjects the evidence was such, we must assume, that the court was unable to find one way or the other. Now it is insisted that because the place was one of extraordinary danger and the act done was one which was likely to produce injury, the court must assume from the mere doing of the act, that it was improperly and unnecessarily done.

This, beyond question, would be the rule in case sounding the whistle on the locomotive while in rapid motion was something which the engineer might always do or omit at his pleasure, without regard to time or place. The case would then be within the rule, that " where a person is doing a voluntary act, which he is under no obligation to do, he is held answerable for any injury which may happen to another, either by carelessness or accident." *Vincent* v. *Stinehour*, 7 Vt. 62. *Underwood* v. *Hewson*, Strange, 596. This principle distinguishes all the cases which the learned counsel have cited in support of their petition.

There is neither legal requirement nor other necessity that

we know of that live coals of fire should, under any circumstances, be dropped from an elevated railroad in such manner as that they may fall upon those passing beneath, along a public street, as was the case in *Lowery* v. *Manhattan R. W. Co.*, 99 N. Y. 158 (52 Am. R. 12). So with the blowing off of steam from an engine. The law fixes no time nor place, when and where, this is to be done, and courts can have no such knowledge of the necessity for so doing, as that it can be said, as a matter of judicial knowledge, that the act must be done at the very moment an emergency arises, as in the case of sounding a whistle. The doing of such an act, without explanation, at a time when and place where there is a high degree of probability that it will produce hurt to others, may well be held to be negligence. The reason is, the person in charge of the engine, presumptively, might have selected another time and place for the act. Where, however, an act is done, in the progress of a business, which customarily is only performed in pursuance of a legal duty or public necessity, it will not be presumed, from the mere doing of the act, that it was un-.necessarily or wrongfully done.

The distinction is precisely that which governs in a case where one who is under no obligation to do so, voluntarily handles a fire-arm in such manner that it is discharged to the hurt of another, and the case of a soldier who, while in exercise, hurts another by the discharge of his piece. In the one case, civil liability attaches, regardless of whether the injury occurred through carelessness or misfortune; in the other, only when the act was done wrongfully or carelessly.

It is as much a requirement of the law that an engine shall be provided with a whistle, and that it shall be blown as occasion may require, as that a soldier shall carry a gun, and that he shall exercise when commanded, and for the same reason that the law will not presume negligence against the soldier when hurt results from the use of that which the law required him to use, it will not presume negligence against the railroad company because it used that which the

law compelled it to use. The engineer may not, to any degree whatever, wait his convenience, or select the place at which the whistle is to be sounded. When certain points are reached, or the emergency arises, the duty is imperative at that moment. Public safety is in many ways involved in the prompt discharge of this duty. We can not put the engineer under the pressure of a rule which shall hold him responsible for failing to sound the whistle on all proper occasions, and at the same time indulge a presumption against him and the railway company, when the whistle is sounded at a place of extraordinary danger, that it was wrongful and unnecessary.

It is no hardship to require of him who asserts that it was wrongful and unnecessary, to produce such a state of facts as will at least enable the court to find something beyond the mere fact that the whistle was sounded.

The petition for a rehearing is overruled.

