# BALTIMORE & OHIO SOUTHWESTERN RAILROAD COMPANY v. SLAUGHTER.

[No. 20,874. Filed November 13, 1906.]

1. NEGLIGENCE.—*Bare Licensee.—Trespasser.—Safety of Premises.*—The owner is under no duty to keep his premises safe for a bare licensee or trespasser who enters such premises upon his own initiative and without any enticement, allurement or invitation of such owner. p. 334.

2. PLEADING. — *Complaint. — Farm Crossings.—Invitation.*—A complaint showing that defendant railroad company built approaches to its track apparently for a farm crossing and planked between its tracks, coupled with the fact that the farmer owning lands on both sides thereof, and his tenants, have been using such crossing, sufficiently shows an invitation for such farmer and his tenants to use same. p. 335.

3. NEGLIGENCE.—*Licensee.—Invitation.—Safety of Premises.*— The owner of premises is under a duty to exercise care for the safety and protection of a licensee who enters such owner's premises by reason of an enticement, allurement or inducement, mere acquiescence in the entry thereof being insufficient to place the owner under such duty. p. 335.

4. EASEMENTS. — *Private Ways. — Negligence.—Care Required from Owner.*—The owner of a private way, built in such manner as to constitute a *quasi*-dedication, or an invitation, to certain persons to use same, is liable for any injury to such persons caused by his failure to use ordinary care therein. pp. 337, 338.

Baltimore, etc., R. Co. *v.* Slaughter—167 Ind. 330.

5.  WORDS AND PHRASES.—*"Invitation."*—*Inferences of.*—*Private Ways.*—*Use of.*—"Invitation," as used in referring to a license to enter the premises of another, imports not only an actual bidding but also an allurement or enticement; and an invitation to use a way may be implied from the manner of constructing same and the continued use thereof by plaintiff.   p. 337.

6.  PLEADING.—*Complaint.*—*Railroads.*—*Farm Crossings.*—*Negligence.*—A complaint by the tenant of a landlord owning lands on each side of a railroad right of way, showing that the railroad company had built a private wagon road crossing over its tracks and had planked between the rails; that plaintiff had used such wagon road since its construction and that defendant negligently placed a hand-car in such road near such crossing, at which plaintiff's team became frightened, causing it to run away and to injure plaintiff, states a cause of action.   p. 338.

7.  SAME.—*Complaint.*—*Railroads.*—*Hand-Cars.*—*Placing in Private Way.*—*Frightening Horses.*—*Ordinary Gentleness.*—A complaint showing that defendant railroad company carelessly and negligently placed its hand-car lengthwise upon plaintiff's farm crossing and carelessly and negligently obstructed the free use of same, and that plaintiff was injured as a direct result thereof by his team's fright thereat, is sufficient, on demurrer, without a direct allegation that his team was ordinarily gentle.   pp. 339, 342.

8.  SAME.—*Negligence.*—*Motion to Make More Specific.*—A motion to make more specific and not a demurrer is the proper remedy where a complaint makes a general allegation of defendant's negligence and resulting injury to plaintiff.   p. 340.

9.  NEGLIGENCE.—*Proximate Cause.*—*Pleading.*—It is not necessary that the proximate cause of an injury should be shown to be one that always or even ordinarily produces the alleged injury; but it is sufficient if it was reasonably to be apprehended that such injury might occur to one while exercising his legal rights.   p. 340.

10.  EVIDENCE.—*Judicial Notice.*—*Pleading.*—Courts judicially know that horses sometimes take fright at unusual objects.   p. 341.

11.  NEGLIGENCE.—*Placing Hand-Car in Railroad Crossing Way.*—*Question for Jury.*—Whether a railroad company was guilty of negligence in placing a hand-car in a farm crossing way is a mixed question of law and fact and a proper question for the jury.   p. 341.

12.  PLEADING.—*Obstruction to Highway.*—*Character of.*—It is not necessary either to allege or prove that an obstruction to a street or highway was calculated to frighten horses, such

question being for the jury, to be determined from all the facts and circumstances.    p. 341.

13.    NEGLIGENCE.—*Railroads.*—*Placing    Hand-Car    in    Way.*— *Frightening High-Spirited Horses.*—A railroad company may be liable for injuries caused by the fright of plaintiff's high-spirited horses at a hand-car, negligently placed by it upon a farm crossing way and calculated to frighten ordinarily gentle horses.    p. 342.

14.    SAME. — *Contributory.* — *Defense.* — *Driving    High-Spirited Horses.*—Courts cannot assume that plaintiff was guilty of contributory negligence in driving a high-spirited team, such question being a matter of defense (§359a Burns 1901, Acts 1899, p. 58).    p. 342.

15.    PLEADING.—*Complaint.*—*Railroads.*—*Negligence.*—*Proximate Cause.*—*Frightening Horses.*—A complaint showing that a railroad company's negligence in the ·placing of a hand-car in a way was so far an efficient cause of the running away of plaintiff's team, that, but for such negligence, it would not so have run, is sufficient on demurrer.    p. 342.

16.    RAILROADS.—*Negligence.*—*Placing Hand-Car in Way.*—A railroad company is liable for injuries caused by its negligence in placing a hand-car, calculated to frighten ordinarily gentle horses, at the side of a farm crossing way.    p. 343.

17.    MUNICIPAL CORPORATIONS.—*Streets.*—*Obstructions Near.*— Municipal corporations may be liable for negligence in placing within the margin of its streets objects calculated to frighten ordinarily gentle horses.    p. 344.

18.    TRIAL.—*Evidence.*—*Variance.*—*Amendments.*—*Appeal    and Error.*—Where the complaint shows that defendant railroad company negligently placed its hand-car in plaintiff's farm crossing way, thereby frightening his horses and causing him injury; and the proof shows that the hand-car was placed by the side of such way, the variance is technical, and the complaint will be treated as amended so as to cover such proof. p. 344.

From Clark Circuit Court; *Harry C. Montgomery,* Judge.

Action by William P. Slaughter against the Baltimore & Ohio Southwestern Railroad Company. From a judgment on a verdict for plaintiff for $500, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*Edward Barton* and *Charles L. Jewett,* for appellant.

*L. A. Douglass* and *H. W. Phipps,* for appellee.

GILLETT, J.—According to appellee's complaint, appellant carelessly and negligently left within the traveled way of a farm crossing, and as an obstruction to the free use of the same, a hand-car, having upon it tools, tin dinner buckets, and clothing, and, as a result of the negligence charged, one of the animals—a mule—composing the team which appellee was driving along said way and across said track, became frightened at the hand-car and ran away, throwing appellee out of his wagon and injuring him. Appellant, having been defeated in the trial court, prosecutes this appeal, and by its first assignment of error draws in question the propriety of the ruling of the court below in overruling a demurrer to the complaint.

It is contended by appellant's counsel that, so far as the complaint shows, appellee was a bare licensee, and that, having availed himself of the privilege of using the crossing, he was bound to accept it as he found it; or, in other words, that appellant could not properly be charged with negligence in having the car within the way.

The allegations of the complaint concerning appellee's authority to use the crossing are as follows: "That said part of said railroad which runs through said Clark county extends from the city of New Albany to the city of North Vernon, Indiana; that at a point on said line of road, at a point about five miles northeast of said city of New Albany, Indiana, and about three hundred yards northeast of what is called and known as the "K. and L." cement mills, defendant had, before November —, 1903, constructed a private wagon-road crossing of its said railroad track at said point, and which said crossing was then and there for the use and benefit of the owners of the adjoining lands on opposite sides of said railroad track at said point, and for their tenants, and for all others who might have occasion to cross over the same in the use of said lands aforesaid;

that said crossing was on said day properly constructed by fastening planks eight feet long to the ties in said track and filling in between them with broken stone, and defendant had also constructed approaches, about thirty feet in length and not to exceed ten feet in width, by throwing up earth, in the form of embankments, and covering them with broken stone; that on said day plaintiff was a tenant of the person who owned the adjoining lands on either side of said track at said crossing, and had been for more than one year, and had on many occasions before said day used said crossing in the prosecution of his said work as tenant; that he cultivated said adjoining lands as farming lands as such tenant, and on said day was entitled, as such tenant, to use said crossing with wagons and teams in the prosecution of his said work;   *   *   *   that about 5 o'clock in the afternoon of said day said plaintiff was lawfully driving a team consisting of one mule and one horse, attached to a two-horse wagon, from one portion of his said farm to another on the opposite side of said track of defendant, and in so doing had occasion to drive over and upon said crossing." In their statement of the contents of the complaint, appellant's counsel fully admit that it appears that appellee was a tenant of the adjacent farm, and that he went upon the crossing in the prosecution of his farm work.

It is doubtless the rule that a bare licensee who goes upon the premises of another for some purpose with which the owner or occupant has no concern, and without any enticement, allurement, or inducement being held out to him by the owner or occupant, assumes the perils arising from defects existing in the premises. Within this class of cases are *Lingenfelter* v. *Baltimore, etc., R. Co.* (1900), 154 Ind. 49, and *Cannon* v. *Cleveland, etc., R. Co.* (1902), 157 Ind. 682.

Putting aside all questions as to the effect of the act of April 8, 1885 (Acts 1885, p. 148, §5320 *et seq.* Burns

1901), we are nevertheless of opinion that the facts charged do not make out a case in which appellee's entry upon the railroad was simply not opposed and prevented. While it is true that it does not appear that the intent of the company in respect to the construction and maintenance of the crossing was ever communicated to anyone, or that appellee acted upon the assumption that the crossing was designed for his use, yet, taking the subjective intent in respect to the purpose of its construction and maintenance, coupled with the fact that the planking of the space between the rails and the building of the long approaches on either side tended to show objectively what the intent was, and adding to this the frequent prior user of the way by appellee, and we have a case wherein it appears to us that it would be contrary to good morals to permit appellant in effect to shift its ground, after the injury and after it had been haled into court, by asserting that appellee had ventured upon the crossing without invitation and at his own risk. Not to refine too much, it seems to us not unreasonable that the company should be subjected in the circumstances to the consequences of having extended an invitation which had been acted on.

In *Indiana, etc., R. Co.* v. *Barnhart* (1888), 115 Ind. 399, this court said: "When a person has a license to go upon the grounds or the enclosure of another, he takes the premises as he finds them, and accepts whatever perils he incurs in the use of such license. But when the owner or occupant, by enticement, allurement, or inducement, whether express or implied, causes another to come upon his lands, he then assumes the obligation of providing for the safety and protection of the person so coming, and for any breach of duty in that respect such owner or occupant becomes liable for any injury which may result to the person so caused to come onto his lands. The enticement, allurement, or inducement, as

the case may be, must be the equivalent of an express or implied invitation. Mere acquiescence in the use of one's land by another is not sufficient. Such an implied invitation may be inferred from some act or line of conduct, or from some designation or dedication. This general doctrine was affirmed in the case of *Evansville, etc., R. Co. v. Griffin* [1885], 100 Ind. 221, 50 Am. Rep. 783, and is well supported by a long line of authorities. *Sweeney* v. *Old Colony, etc., Railroad* [1866], 10 Allen 368, 87 Am. Dec. 644; *Smith* v. *London, etc., Docks Co.* [1868], L. R. 3 C. P. 326; *Carleton* v. *Franconia Iron, etc., Co.* [1868], 99 Mass. 216; *Toledo, etc., R. Co.* v. *Grush* [1873], 67 Ill. 262, 16 Am. Rep. 618; *Doss* v. *Missouri, etc., R. Co.* [1875], 59 Mo. 27, 21 Am. Rep. 371; *Elliott* v. *Pray* [1866], 10 Allen 378, 87 Am. Dec. 653; *Stratton* v. *Staples* [1871], 59 Me. 94; *Railroad Co.* v. *Hanning* [1872], 15 Wall. 649, 21 L. Ed. 220; *Bennett* v. *Louisville, etc., R. Co.* [1881], 102 U. S. 577, 26 L. Ed. 235; *Hayes* v. *Michigan Cent. R. Co.* [1884], 18 Reporter 193. See *Lary* v. *Cleveland, etc., R. Co.* [1881], 78 Ind. 323, 41 Am. Rep. 572; *Pittsburgh, etc., R. Co.* v. *Bingham* [1876], 29 Ohio St. 364; *Jeffersonville, etc., R. Co.* v. *Goldsmith* [1874], 47 Ind. 43; *Hargreaves* v. *Deacon* [1872], 25 Mich. 1; *Nicholson* v. *Erie R. Co.* [1870], 41 N. Y. 525; *Durham* v. *Musselman* [1827], 2 Blackf. 96, 18 Am. Dec. 133; *Hounsell* v. *Smyth* [1860], 97 Eng. C. L. 731; *Gillis* v. *Pennsylvania R. Co.* [1868], 59 Pa. St. 129, 98 Am. Dec. 317; *Southcote* v. *Stanley* [1856], 1 H. & N. 247; *Bolch* v. *Smith* [1862], 7 H. & N. 736; *Lygo* v. *Newbold* [1854], 24 Eng. L. & Eq. 507; *Burdick* v. *Cheadle* [1875], 26 Ohio St. 393, 20 Am. Rep. 767; *Hardcastle* v. *South Yorkshire R., etc., Co.* [1859], 4 H. & N. 67."

The case as pleaded contains some of the elements of a dedication, and while we would not be understood as ap-

plying that doctrine to a private use, yet the consideration is not without value in determining whether it is just to hold that appellee occupied no higher plane of right, as respects negligence, than a mere trespasser. In *Bennett* v. *Louisville, etc., R. Co., supra,* we find the court observing: "The deceased, when injured, was using the premises for some of the very purposes for which they had been appropriated, and to which they had, so to speak, been dedicated by the owner." An essentially similar observation is to be found in *Indiana, etc., R. Co.* v. *Barnhart, supra.* But the word "invitation," to which the cases on the subject under consideration so often refer, includes, both in its lexicographical and its legal sense, not only an actual bidding, but also an allurement or enticement. While an invitation may not, at least in most circumstances, grow out of mere passivity as respects the condition of the premises, yet the cases abundantly justify the assertion that where an owner constructs a way over his premises in such a manner as apparently to be for the use of certain persons, with the intent that they should use it, and they continue to enjoy it for a considerable period of time, he owes to them a duty to exercise ordinary care for their safety while pursuing the privilege, so far as his own acts are concerned, and this is especially true as to a new and unapprehended danger.

In *Corby* v. *Hill* (1858), 4 C. B. (N. S.) 556, 562, the plaintiff was injured while driving along a private road, extending from a turnpike to a lunatic asylum, owing to the presence of a quantity of slate which the defendant had deposited upon the way. The latter attempted to justify under the permission of the owners of the soil. Cockburn, C. J., said: "The proprietors of the soil held out an allurement whereby the plaintiff was induced to come upon the place in question; they held out this road to all persons having occasion to proceed to the asylum as the means of access thereto. * * * Having, so to speak,

dedicated the way to such of the general public as might have occasion to use it for that purpose, and having held it out as a safe and convenient mode of access to the establishment, without any reservation, it was not competent for them to place thereon any obstruction calculated to render the road unsafe, and likely to cause injury to those persons to whom they held it out as a way along which they might safely go. If that be so, a third person could not acquire the right to do so under their license or permission." In the same case, Williams, J., said: "I see no reason why the plaintiff should not have a remedy against such wrongdoer, just as much as if the obstruction had taken place upon a public road. Good sense and justice require that he should have a remedy, and there is no authority against it." Willes, J., remarked: "The defendant had no right to set a trap for the plaintiff. One who comes upon another's land by the owner's permission or invitation has a right to expect that the owner will not dig a pit thereon, or permit another to dig a pit thereon, so that persons lawfully coming there may receive injury." It is our conclusion that the facts pleaded show that appellee was more than a bare licensee, and that he was entitled to complain of the negligence charged.

Thus far we have dealt with a question, owing to the generality of the points made, which it was perhaps not the intention of counsel for appellant to raise. While they assert that appellee was a bare licensee, to whom appellant was not liable for its negligence, yet their whole ground for this assertion, so far as anything definitive in their brief is concerned, is based on the statement in *Bennett* v. *Louisville, etc., R. Co., supra,* to the effect that it is stated in Campbell, Negligence, §33, that "the principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it." But even in the

case of *Bennett v. Louisville, etc., R. Co., supra,* the court states that no definite rule can be laid down, and the whole trend of the opinion is against the position of counsel. In the absence of further proof of the circumstances of the party's entry than that it was for his pleasure or benefit, there may be a presumption that he was a bare licensee, but the view is utterly wrong that this fact forms the basis of a controlling principle. In the leading case of *Sweeny* v. *Old Colony, etc., Railroad* (1866), 10 Allen 368, 87 Am. Dec. 644, the company was held liable for the negligence of its flagman in signaling that the way was clear at a crossing which belonged to the railroad but which it had permitted the public to use for the purposes of travel. It was argued on behalf of the company that to hold it liable would involve the anomaly of charging it with a failure to guard a place which it was not bound to keep open; but Bigelow, C. J., said: "If a person undertakes to do an act or discharge a duty by which the conduct of others may properly be regulated and governed, he is bound to perform it in such a manner that those who are rightfully led to a course of conduct or action, on the faith that the act or duty will be duly and properly performed, shall not suffer loss or injury by reason of his negligence." And so we find it stated by Judge Cooley, that if one "expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." Cooley, Torts (2d ed.), 605.

The next objection which appellant's counsel urge against the complaint is that it fails to aver that the hand-car and articles thereon were calculated to 7. frighten horses of ordinary gentleness. There is no doubt that this is an essential element in the case, but it does not follow that it must be specifically al-

leged. It is charged that the defendant carelessly and negligently placed said hand-car lengthwise upon the crossing, and carelessly and negligently obstructed the free use of the same by said hand-car, and also that the accident and injuries set forth were caused by, and were the direct result of, the negligence charged. We are of opinion that it was not necessary to plead more specifically as to the nature of the defect. It is a general rule, both in this State and elsewhere, that in complaints or declarations for negligence it is competent, after showing the existence of a duty by appropriate allegations, to predicate negligence, charged in general terms, upon any act or omission whereby it is claimed that that duty was violated. If the pleading is not sufficiently specific, the remedy is by motion; it cannot be taken advantage of by demurrer. *Brookville, etc., Turnpike Co.* v. *Pumphrey* (1877), 59 Ind. 78, 26 Am. Rep. 76; *Ohio, etc., R. Co.* v. *Collarn* (1881), 73 Ind. 261, 38 Am. Rep. 134; *Louisville, etc., R. Co.* v. *Krinning* (1882), 87 Ind. 351; *Cleveland, etc., R. Co.* v. *Wynant* (1885), 100 Ind. 160; *Cincinnati, etc., R. Co.* v. *Gaines* (1886), 104 Ind. 526, 54 Am. Rep. 334; *Town of Rushville* v. *Adams* (1886), 107 Ind. 475; *Pittsburgh, etc., R. Co.* v. *Kitley* (1889), 118 Ind. 152; *Cleveland, etc., R. Co.* v. *Wynant* (1889), 119 Ind. 539; *Rodgers* v. *Baltimore, etc., R. Co.* (1898), 150 Ind. 397, and cases cited; *Lake Erie, etc., R. Co.* v. *McFall* (1905), 165 Ind. 574; note to *King* v. *Oregon, etc., R. Co.* (1898), 59 L. R. A. 209.

It is not necessary, in order to justify the submission of the question of negligence to a trial, that it should appear that the effect of the act or omission complained of as negligent would in all cases, or even ordinarily, be to produce the consequences which followed. It is sufficient to present a trial question if it was to be reasonably apprehended that such an injury might thereby occur to another while exercising his legal

Baltimore, etc., R. Co. *v.* Slaughter—167 Ind. 330.

right in an ordinarily careful manner. *Ohio, etc., R. Co. v. Trowbridge* (1890), 126 Ind. 391. It is not an uncommon thing, as the courts judicially know, for horses to be frightened at unusual objects. *Billman v. Indianapolis, etc., R. Co.* (1881), 76 Ind. 166; Wharton, Negligence (2d ed.), §107. Whether the act of placing the hand-car within the limits of the crossing was so calculated to frighten horses which might pass along the way as to render it negligent to do such an act, was a mixed question of law and fact, and it was presented by the issue formed upon the allegation that the act was negligently done. In *Cleveland, etc., R. Co. v. Wynant* (1887), 114 Ind. 525, 5 Am. St. 644, Mitchell, C. J., said: "All horses are disposed to scare or shy at objects of an unusual character in a highway. Roads are prepared with reference to this generally known disposition, and persons who place or leave objects in a highway are likewise charged with notice of this habit. These are things which every adult person of ordinary experience must be presumed to know. It is not, therefore, a subject to be pleaded and proved, whether a box-car, or any other particular object, is naturally calculated to frighten horses. This is to be determined by the experience, observation, and intelligence of the court and jury as applied to all the facts of the particular case before them." But without further discussion of the objection stated we content ourselves with the statement that in several cases this court has treated as unnecessary the averment that the object complained of was calculated to frighten horses of ordinary gentleness. *Brookville, etc., Turnpike Co. v. Pumphrey, supra; Cincinnati, etc., R. Co. v. Gaines, supra; Town of Rushville v. Adams, supra; Pittsburgh, etc., R. Co. v. Kitley, supra; Rodgers v. Baltimore, etc., R. Co., supra.*

The further objection is made to the complaint that it fails to aver that appellee's mule was an animal of ordinary

gentleness. The allegation which the complaint contains is that the mule was "well broken and not fractious or balky." If this be not an equivalent allegation, we are nevertheless of opinion that the general charges in respect to negligence rendered the complaint good on demurrer. Conceding, as we do, that there is no liability where the object which occasioned the mischief was not naturally calculated to frighten horses of ordinary gentleness, yet it by no means follows that the owner of a high-spirited horse is remediless for an injury occasioned by its running away, owing to its being frightened by an object naturally calculated to frighten horses of ordinary docility. In view of the statute (§359a Burns 1901, Acts 1899, p. 58), we cannot assume that appellee was guilty of contributory negligence in driving the animal in question,. and with this element subtracted from the case as presented by the complaint, appellee appears to be entitled to recover on the facts admitted by the demurrer, as it is averred in the complaint that appellant was negligent in the particulars stated and that such negligence was the cause of, and directly resulted in, the accident and injury. If, without the contributory fault of the driver, a horse runs away, and the negligent act of another is so far an efficient cause that, but for such negligence, the horse would not have run away, it would seem on general principles that the latter would be liable for an injury thereby caused to the driver. *Grimes* v. *Louisville, etc., R. Co.* (1892), 3 Ind. App. 573, and cases cited. This state of facts seems, in legal effect, to be shown by the complaint before us when it is subjected to the rules of construction which govern complaints in negligence cases. It was assumed in *Town of Rushville* v. *Adams* (1886), 107 Ind. 475, not only that it is required that the object or obstruction should be one calculated to frighten horses of ordinary gentleness, but also that the particular horse should be of that character.

In answer, however, to the objection that these facts did not appear from the complaint, the court in that case said: "The general averment in the complaint before us, that the injury was not caused by any negligence or carelessness on the part of the plaintiff, but was caused wholly by the negligence of the town in permitting the person to maintain and carry on the business of making candy on the street, we think, makes the complaint good as against the demurrer for want of facts." Bearing in mind the effect of the contributory-negligence statute since passed, the case from which we have just quoted appears to be an apposite precedent in support of the view—whether the character of the particular animal be an element or not—that the general charge of negligence, coupled with the averment that the injury was thereby caused, sufficiently shows that the legal rights of the complaining party have been invaded. See, also, *Keeley Brewing Co.* v. *Parnin* (1895), 13 Ind. App. 588. We hold that the complaint is sufficient.

Under an assignment of error based on the overruling of a motion for a new trial, appellant's counsel argue that in a number of particulars the evidence fails to sustain the verdict. We have read the testimony, as set out in the bill of exceptions, and are of opinion that it cannot be said that there is an entire lack of evidence in support of any proposition which appellee was called on to maintain under the issues. The point which counsel for appellant place most stress upon under the assignment in question is that the testimony shows that the hand-car was at one side of, and not in, the way, and it is claimed that for this reason the evidence failed to sustain the theory of the complaint. There seems to be some confusion in the testimony between the way, as it was graded up, and the ordinary or traveled track. There is some testimony that the hand-car was within the way. But, if it can be said that the evidence shows that the hand-car was outside of,

although very near, the way, yet it does not follow that appellee was not entitled to recover. Where an object calculated to frighten horses is placed near, but not in, a public street, there would be a question as to the liability of the city therefor, owing to the fact that the municipality did not have control over the place where the object was located. We can perceive no reason, however, for the holding that where the title to a way and the adjoining lands is in the same person there is no liability. Even in the case of a conveyance of a way of a fixed width, it would be to permit the holder of the servient estate to derogate from his own grant to uphold him in his act of placing an object calculated to frighten horses so near the way as to impair the value of the use. The placing of the hand-car where it was, if the act was really calculated to produce the mischief complained of, impinged upon the rights of appellee, although perhaps in a lesser degree than would have been the case had there been a physical obstruction of the way.

Even in the case of a public road, a municipality may be liable for placing an obstruction calculated to frighten horses within the margin thereof. *Foshay* v. *Town of Glen Haven* (1870), 25 Wis. 288, 3 Am. Rep. 73; *Morse* v. *Town of Richmond* (1868), 41 Vt. 435, 98 Am. Dec. 600. As indicated in the latter case, the right to control the whole width of the road gives rise to a corresponding duty. There are perils attending the use of farm crossings which are concomitants of the use, such as the dangers occasioned by the passing of trains and the like, but the act in question caused a wholly unnecessary peril, and one which was in nowise inherent in the use, and it was the invasion of appellee's right in this particular which really constituted the gist of his action. If it can be said that evidence that the hand-car was placed on the margin of the way does not substantially prove the allegation as laid, yet at most there was but a technical variance, which it is our duty to treat as

if the defect had been obviated by amendment. *Farley* v. *Eller* (1868), 29 Ind. 322; *Reddick* v. *Keesling* (1891), 129 Ind. 128; *Latshaw* v. *State, ex rel.* (1901), 156 Ind. 194; *Hartwell Bros.* v. *Peck & Co.* (1904), 163 Ind. 357; *M. S. Huey Co.* v. *Johnston* (1905), 164 Ind. 489. This was the holding in *Bristol Hydraulic Co.* v. *Boyer* (1879), 67 Ind. 236, where the supposed variance was of the same character as it is contended existed in this case.

We find no error. Judgment affirmed.