·Groff *v.* State—171 Ind. 547.

---

## GROFF *v.* THE STATE OF INDIANA.

[No. 21,145. Filed October 14, 1908. Rehearing denied January 8, 1909.]

1. STATUTES.— *Criminal.*— *Construction.*— Criminal statutes are strictly construed, but such reasonable view must be taken as will carry out the intent of the legislature. p. 548.
2. STATUTES.—*Pure Food.—Intent.—Construction.*—The intent of the pure food law (Acts 1907, p. 153, §7638 *et seq.* Burns 1908) was to protect the people against fraud and imposition by the sale of impure and inferior articles, and such construction should be given thereto as will secure such benefits. p. 549.
3. CRIMINAL LAW.—*Selling Impure Foods.—Intent.*—In a prosecution for a violation of section one of the pure food law (Acts 1907, p. 153, §7638 Burns 1908), providing, among other things, that it shall be unlawful for any person, firm or corporation to sell any misbranded or adulterated article of food, the defendant's knowledge of the misbranding or adulteration is immaterial, the sale itself being prohibited. p. 549.
4. HEALTH.—*Sales of Adulterated or Impure Foods.—Guilty Intent.*—The sale of adulterated or impure food is dangerous to the public health, and the guilty intent of the seller is irrelevant. p. 549.
5. CRIMINAL LAW.—*Pure Food.—Sales of Oleomargarine for Butter.—Principal and Agent.*—The sale of oleomargarine for butter

constitutes a crime under the pure food law (Acts 1907, p. 153, §1, §7638 Burns 1908), and a merchant is liable for the sale thereof by his agent, though he has given such agent explicit instructions not to make such sales. p. 550.

6.  PRINCIPAL AND AGENT.—*Unlawful Sales by Agent.—Liability of Principal.*—Where the element of guilty knowledge and intent is eliminated from an offense, the principal is liable for unlawful sales made by his agent in the general scope of his business. p. 553.

From Criminal Court of Marion County (36,246); *William Irvin,* Judge *pro tem.*

Prosecution by The State of Indiana against Nathan B. Groff. From a judgment of conviction, defendant appeals. *Affirmed.*

*L. D. Buenting* and *M. Y. Campbell,* for appellant.

*James Bingham,* Attorney-General, *Henry M. Dowling, A. G. Cavins* and *E. M. White,* for the State.

HADLEY, J.—Appellant was found guilty of selling oleomargarine for dairy butter, in violation of the pure food law of 1907 (Acts 1907, p. 153, §7638 *et seq.* Burns 1908).

The overruling of his motion for a new trial, because the finding by the court was contrary to law and the evidence, is the only error assigned.

The question for decision is: Can a principal be held criminally liable for the sale, by a clerk or agent, of adulterated food, if the sale was made in the absence of the principal, and in violation of his instructions?

The general rule is that criminal statutes must be strictly construed to avoid the creation of penalties by construction, but such reasonable view must be taken of a statute 1. as will effectuate the manifest intent and purpose of the lawmakers. *State, ex rel.,* v. *Roby* (1895), 142 Ind. 168, 185; *State* v. *Kelly* (1896), 54 Ohio St. 166, 43 N. E. 163; Gillett, Crim. Law (2d ed.), §20.

It is too obvious for discussion that said pure food statute was enacted as a means of protecting the people against the

fraud and imposition of manufacturers and venders

2. of inferior and unwholesome food and medicinal products. The statute is of great public interest, and such interpretation should be given it—if possible, within sound canons of construction—as will secure to the people the benefits intended by the General Assembly.

In the first place, the offense created by the statute belongs to that class in which knowledge, or guilty intent, is immaterial, and need not be shown in order to justify

3. a conviction. It falls under the general rule that statutes which declare the doing of a certain thing shall constitute an offense against the public, without reference to whether done without notice, or with guilty knowledge. In such cases it is the act itself, not the intent, that determines the guilt; the actual harm to the public is the same in one case as in the other.

The distribution of impure or adulterated food for consumption is an act perilous to human life and health; hence,

4. a dangerous act, and cannot be made innocent and harmless by the want of knowledge or the good faith of the seller. *State* v. *Engle* (1901), 156 Ind. 339; *Commonwealth* v. *Gray* (1889), 150 Mass. 327, 329, 23 N. E. 47; *State* v. *Schlenker* (1900), 112 Iowa 642, 649, 84 N. W. 698, 51 L. R. A. 347, 84 Am. St. 360; *People* v. *Kibler* (1887), 106 N. Y. 321, 12 N. E. 795; *People* v. *Worden Grocery Co.* (1898), 118 Mich. 604, 611, 77 N. W. 315; *Commonwealth* v. *Weiss* (1891), 139 Pa. St. 247, 252, 21 Atl. 10, 11 L. R. A. 530, 23 Am. St. 182; *Engle* v. *Nowlin* (1899), 94 Fed. 646, 648; *State* v. *Rogers* (1901), 95 Me. 94, 102, 49 Atl. 564, 85 Am. St. 395; *Fox* v. *State* (1901), 94 Md. 143, 146, 50 Atl. 700, 89 Am. St. 419; *State* v. *Ryan* (1899), 70 N. H. 196, 46 Atl. 49, 85 Am. St. 629.

The offense under consideration is thus defined by the statute: "It shall be unlawful for any person, firm or corporation, within this State, to manufacture for sale within

this State, offer for sale therein, or sell within this State, any drug or article of food which is adulterated, or misbranded.'' §7638, *supra*. ''That for the purpose of this act an article shall be deemed as adulterated: * * * In case of food: * * * Second. If any substance has been substituted wholly or in part for the article.'' §7639, *supra*.

Guilty intent is not an element in the crime, as we have seen; hence, the rule that governs in that large class of offenses, which rests upon criminal intent, has no application here. Cases like this are founded largely upon the principle that he who voluntarily deals in perilous articles must be cautious how he deals.

The sale of oleomargarine in an adulterated form, or as a substitute for butter, is a crime against the public health. Whoever, therefore, engages in its sale, or in the sale

5. of any article interdicted by the law, does so at his peril, and impliedly undertakes to conduct it with whatever degree of care is necessary to secure compliance with the law. He may conduct the business himself, or by clerks or agents, but if he chooses the latter the duty is imposed upon him to see to it that those selected by him to sell the article to the public obey the law in the matter of selling; otherwise, he, as the principal and the responsible proprietor of the business, is liable for the penalty imposed by the statute. We do not believe it was the legislative intent that such proprietor should escape by showing that an unlawful sale made by his clerk was unauthorized. We must take a practical, common-sense view of the whole statute, to give effect to the legislative purpose. To hold that the proprietor should be held liable only when the sale was made in his presence, or with his knowledge or consent, would be to prepare a way of easy escape. When we take into consideration the community of interest of the proprietor and clerk, in a case like this, and that private instructions to a clerk may be given in such a way that there may be more meaning in the manner than in the words spoken, and adding thereto

the fact that the modern method of ordering supplies by telephone renders the identification of the seller generally impossible, we are led to the conclusion that to sustain appellant's contention would operate as a virtual overthrow of the statute.

Upon the same subject, it was said by a learned judge in the State of Ohio: "To hold that by private instructions to a clerk a person in the oleomargarine business might escape prosecution or punishment, would go a long way, it seems to us, toward destroying the beneficial effects and purposes of this law. In many cases such goods are ordered by telephone, and the clerk is not seen; there is no way of identifying him. * * * Where the article is sold by his authority, it is not like a case where a party has prohibited his clerks from selling the article at all, or where the clerk without any authority has sold the article, or where some one has come into his store without authority and sold the article. But here is a case where the party is engaged in the business of selling, where he intends to sell it, and where his clerks are authorized and employed to sell it." *Williams* v. *State* (1902), 4 Ohio C. C. (N. S.) 193; the same case affirmed, *Williams* v. *State* (1904), 69 Ohio St. 570, 70 N. E. 1135.

In construing an act of congress upon the same subject, which provided that "every person who knowingly sells or offers for sale any oleomargarine," etc., it was said in *Prather* v. *United States* (1896), 9 App. Cas. 82, 94: "It was sufficient if the article was sold in the defendant's place of business in the usual and ordinary course of business, whether it was sold by himself personally or by a clerk or employe." To the same effect, on a similar statute, see *Hunter* v. *State* (1858), 1 Head. (Tenn.) *160, 73 Am. Dec. 164; *Newton* v. *Reed* (1887), 10 N. J. Law J. 175.

See, further, the text in 19 Cyc., 1094: "While the possession or sale on the part of an agent or servant is not in itself sufficient for a conviction of the principal, yet where

such possession or sale is connected with a regular business and within the scope of the agency the principal has always been held liable.''

Also, the master may be held liable for an inadvertent sale made by his servant in the ordinary course of his business. *Commonwealth* v. *Warren* (1894), 160 Mass. 533, 36 N. E. 308; 17 Am. and Eng. Ency. Law (2d ed.), 387.

The evidence discloses the following facts: Appellant is the proprietor of a stall in the Indianapolis market house. Among many other food products, he keeps for sale oleomargarine and creamery butter, but not dairy butter. April, 1907, one Bruner, an inspector in the employ of the State Board of Health, presented himself at appellant's stall and asked for one pound of dairy butter. Appellant was not present. The stall was in sole charge of a young woman, a clerk and employe of appellant, who answered Bruner's application by taking from under the counter a package which she wrapped and handed to Bruner, and for which she charged and received twenty-five cents. The package was wrapped in a paper that had stamped upon it in large letters the word ''Oleomargarine,'' but which word was not observed by Mr. Bruner until the day of the trial of this cause. Appellant had previously given instructions to the young lady clerk to sell everything in the stall for just what it was, and to sell nothing as a substitute for something else.

These facts show that the sale was made by a clerk who was employed by appellant to sell oleomargarine from the particular stall, along with butter and other things. The sale was in the regular course of business, in the exercise of the usual duties of her employment, made for appellant, upon his apparent authority and for his benefit; and it seems clear that he should be answerable if he had failed to apply the necessary precautions in the selection, counseling and oversight of his agent; or, in other words, held responsible for what he had done by another.

As sustaining his position of nonliability as the principal for the delinquency of his agent, appellant cites a number of liquor cases decided by this court, in which it has been held that a saloon-keeper is not liable for unlawful sales made by his barkeeper, wife, or other person, in his absence, and without his knowledge or consent, or in violation of his instructions.

As touching the Indiana cases cited, it is said in 17 Am. and Eng. Ency. Law (2d ed.), 387: "In a number of jurisdictions the employer is criminally liable for a violation of the liquor laws by his agent or servant, although the acts which form the basis of the prosecution are done without his knowledge or consent, or against his directions given in good faith. These statutes, though not differing materially, if at all, from the statutes in the states in which no criminal liability is held to attach to the employer under like circumstances, are, by the construction placed upon them, held to eliminate the element of guilty knowledge or intent. It has therefore been held that if the statute makes it an offense for 'any person' to sell, etc., * * * the master will be liable for a violation of the act by his agent or servant committed without his knowledge or consent and against his express directions."

While the adjudications are not in harmony, as indicated by the text quoted, we think the better reason and weight of authority are to the effect that when the element 6. of guilty knowledge and intent is eliminated from an offense, and the doing of the act by any person is interdicted, the principal shall be held to answer for the delinquency of his agent while the latter is engaged in performing the usual duties of the agency.

With respect to the Indiana cases there is at least doubt of the correctness of some of the things said in some of them, and all of them go quite as far as they should in relieving the employer from liability for unlawful sales made by those authorized by him to make sales in his absence, and we are

not inclined to extend the principle to pure food cases, even if it can be said that the cases are not distinguishable, concerning which we intimate no opinion.

Judgment affirmed.

Gillett, C. J., dissents.