## BOHALL v. THE STATE OF INDIANA.

[No. 21,822.   Filed November 28, 1911.]

1.   APPEAL.—*Briefs.—Omissions.—Supply by Appellee.*—Where appellant claims to include all the evidence in his brief, but appellee sets out certain omitted evidence, the Court, on appeal, will consider the evidence, a good faith effort having been shown.   p. 567.

2.   HOMICIDE.—*Murder.—Bullets.—Mistake in, by Clerk.—Notice.—Failure to Object.*—Where the clerk of the court had the custody of certain bullets to be introduced as evidence in a murder case and by mistake other bullets were substituted, the defendant cannot complain thereof for the first time in his motion for a new trial, where his attorneys knew thereof during the argument to the jury, the defendant being required to object at the earliest opportunity.   p. 567.

From Jackson Circuit Court; *Joseph H. Shea*, Judge.

Prosecution by The State of Indiana against Garfield Bohall.   From a judgment of conviction, defendant appeals. *Affirmed.*

*John M. Lewis*, for appellant.

*Thomas M. Honan*, Attorney-General, *Thomas H. Branaman, Edwin Corr* and *James E. McCullough*, for the State.

JORDAN, J.—Appellant was indicted by the grand jury of Jackson county, and charged with having committed the crime of murder in the first degree.   On his plea of "Not guilty," he was tried by a jury, and a verdict returned finding him guilty of murder in the second degree, and his punishment was fixed at imprisonment in the state prison during life.   Over his motion for a new trial judgment was rendered by the court on the verdict.

From this judgment he appeals, and assigns as errors the overruling of his motions to quash the indictment and for a new trial.

The alleged error in overruling the motion to quash the indictment is not presented nor referred to by appellant in his brief, and therefore it is waived.

The Attorney-General contends that counsel for appellant has not complied with rule twenty-two of this court in preparing his brief, and that therefore the questions sought to be raised should not be considered.

1.

Appellant's counsel, however, professes to have set out in the brief all the evidence given in the case, and that which the Attorney-General claims has been omitted is supplied in the brief of that official. In fact, it may be said that the only point upon which appellant relies for reversal is set forth in the brief. There has been a substantial compliance with the requirements of rule twenty-two, and this is sufficient.

Counsel for appellant in his brief states that the only question presented to the court for its decision in this case is, "Does a mistake of the clerk, that prevents the defendant from having a fair trial, constitute a reversible error?"

2.

On November 28, 1909, at Seymour, Jackson county, Indiana, appellant shot and killed his brother, Thornton Bohall. Appellant claimed that the shooting was accidental, but the State contended that he was guilty of murder in the first degree. The evidence shows that on said date Joseph and Thornton Bohall, brothers of appellant, were on the premises of William B. Bohall, appellant's father, in said city of Seymour. Joe and Thornton became engaged in a fight, and continued fighting around and in the house of their father for over an hour. Appellant went into the house, as he claims, for the purpose of separating his brothers. Witnesses testified that after the fight had continued for some time in the house, Thornton Bohall came out, with his clothes torn and his face bleeding, and started towards the barn. Appellant then came out, drew a pistol and said he would shoot him. By this time Thornton had reached the sidewalk, and was walking away. Appellant pointed his pistol in front of him, and said to Thornton: "I will shoot you." Thornton replied: "All I want

is my hat and coat." Thornton was then joined by his brother Joe, who came out of the house, and both said to appellant: "Don't shoot." Thornton at the time was walking backwards on the sidewalk. Appellant took several steps toward Thornton, who then said: "All I want is my coat and hat, but I will have all of you arrested." About this time appellant fired his pistol and shot Thornton. At the time the shot was fired they were about twenty or twenty-five feet apart, and Thornton was walking away from appellant. It was about three minutes after appellant had threatened to shoot, that he fired the fatal shot. After Thornton was shot, a crowd gathered, and appellant said to them: "Stand back. This is no side-show."

The marshal of Seymour testified that he was called to the Bohall place. When he arrived, there was a crowd standing on the corner. He saw Thornton Bohall lying on the sidewalk, and Garfield was standing at his head. He asked appellant who did it, and he replied: "I did; but I could not help it. I had to do it." To other witnesses appellant stated that he had to do the shooting "to settle the fuss."

It is shown that William D. Bohall, the father of the three Bohall boys, had a jug of alcohol at his house. Of this liquor his three sons are shown to have imbibed on the day of the homicide.

Appellant testified that while his two brothers were fighting he tried to separate them; that Joe had Thornton down on the porch, and when Thornton got up and started for the barn Joe and appellant followed him; that Joe and Thornton were about to renew the fight, and in order to prevent them, appellant stepped between them, and while in that position his brother Joe shoved him against the fence and the pistol that he had in his hands was discharged, and Thornton was killed.

The marshal of Seymour testified that after the shooting he found two .38-calibre cartridges in appellant's pocket,

and that appellant stated to him that these cartridges were the same calibre with which his pistol was loaded at the time it was discharged.

While there is some evidence in the record favorable to appellant, nevertheless the evidence shows that the shooting was purposely and maliciously done, and fully justifies the verdict. It appears that appellant has been twice tried on this charge. On the first trial the jury failed to agree. At that trial the two .38-calibre cartridges found in appellant's pocket were introduced in the evidence by the State. After the close of this latter trial, these cartridges, together with the revolver were placed in the custody of the clerk of the lower court for safe-keeping until the next trial. At the trial upon which appellant was convicted, the clerk or his deputy, by mistake, turned over to the prosecuting attorney, to be introduced in evidence, the wrong cartridges. Instead of delivering to the State's attorney the two .38-calibre cartridges, found in the appellant's pocket, and introduced in evidence at the first trial, he delivered to him two .32-calibre cartridges, which said attorney, in ignorance of the mistake made by the clerk, introduced in evidence. It does not appear that either appellant or his counsel made any effort to examine these cartridges to see if they were the correct ones, or made any objection to their introduction.

Counsel for appellant, in their affidavits filed in support of the motion for a new trial, state that they did not know that the cartridges introduced in evidence upon the trial were not the same ones introduced at the first trial; that they did not receive notice of this mistake until after the jury had retired to deliberate upon a verdict. It appears, however, that after receiving this notice they made no appeal to the trial court to have the jury returned into court, and to have the court advise the jury of the mistake, and correct it, by permitting the State to withdraw the wrong cartridges and introduce the proper ones. So far as appears, they had ample time and opportunity to take the

necessary steps to correct the mistake, but both appellant and his counsel were content to take the chance of having a favorable verdict returned, and, if disappointed in the result, then make application to the court for the first time. That appellant had ample opportunity to correct the mistake is shown by the statement of his counsel in their brief, in which it is said that at the trial, and during the closing argument of the prosecuting attorney to the jury, that official exhibited to them the revolver by which decedent was shot, together with the two .32-calibre cartridges that had been introduced in evidence, and demonstrated that these latter cartridges would not fit the .38-calibre revolver. Certainly then, appellant and his counsel, who at the time were present in court, ought to have observed that a mistake had been made, and that the wrong cartridges had been introduced in evidence, but they made no effort to have the mistake corrected. No doubt if appellant had applied to the court and made a satisfactory showing that the wrong cartridges had been introduced in evidence, then we may assume that on his application the court would have had the mistake corrected before the jury retired to deliberate upon a verdict, or would have had it returned into court, and caused the State to make the necessary correction. Appellant having failed to make the proper appeal or application to the lower court to have the jury apprised of the mistake in question, and to have it corrected, is not now in a position to avail himself of what he terms a mistake of the clerk of the lower court, for the rule is well settled that a party will not be permitted, without objection, to take the chances of a favorable result in the case, and then, in the event he is disappointed in that respect, make his complaint thereafter to the trial court for the first time. *Henning* v. *State* (1886), 106 Ind. 386, 55 Am. Rep. 756; *Trombley* v. *State* (1906), 167 Ind. 231, 234.

Counsel for appellant advance no satisfactory reason to

show that appellant was in any manner harmed by the introduction of the cartridges in question.

There is no reversible error presented by the record; therefore the judgment is affirmed.