# Boos v. State of Indiana.

[No. 22,548. Filed April 30, 1914.]

1. CRIMINAL LAW.—*Sufficiency of Indictment.—Review on Appeal.* —By virtue of §348 Burns 1914, Acts 1911 p. 415, providing that objections to a complaint that are not taken by demurrer or answer are waived, an assignment of error on appeal in a criminal case, that the indictment does not state a public offense, is not available. p. 565.

2. INDICTMENT.—*Date of Offense.—Impossible Date.—Motion to Quash.*—An indictment charging the commission of an offense at an impossible future date is properly subject to a motion to quash. p. 565.

3. CRIMINAL LAW.—*Pleadings.—Applicability of Rules of Civil Practice.*—The civil code does not govern appeals in criminal cases, but the criminal code provides that where no special provision has been made the rules of pleading and practice in civil actions shall control when applicable, and expressly adopts the

definitions and terms of the civil code, so far as applicable, so that it will be presumed that the criminal code was enacted in view of the settled principles of the common law, except as modified by the usages and general practice and pleading under the civil code. p. 565.

4.  CRIMINAL LAW.—*New Trial.—Motion in Arrest of Judgment.—* A motion in arrest of judgment in a criminal case waives a motion for a new trial.  p. 566.

5.  CRIMINAL LAW.—*Motion in Arrest of Judgment.—Aider by Verdict.—*While a motion in arrest of judgment in a criminal cause is limited in its scope by §2159 Burns 1914, Acts 1905 p. 584, §283, .at common law such a motion performed the same office as a demurrer, rendering fatal whatever was fatal under a demurrer, and also operated to arrest the judgment for causes other than the insufficiency of the indictment, or causes appearing on the face of the record; but the rule in civil cases that a complaint may be aided after verdict did not obtain in criminal causes, nor were criminal proceedings aided by the statutes of jeofails and amendments.  p. 566.

6.  CRIMINAL LAW.—*Motion in Arrest of Judgment.—Aider by Verdict.—*While there is a distinction between the imperfect statement of a cause of action and a statement which fails to show a cause of action, in that the defect in a merely imperfect statement must be reached, if at all, by motion and not by demurrer, a pleading or indictment, even if properly subject to demurrer or motion to quash, as well as one in which the defect cannot be thus reached, is cured by intendment or presumption after verdict so as to withstand a motion in arrest of judgment, if the issue joined was such as necessarily required proof of the facts defectively stated or omitted, and without which it is not to be presumed either that the judge would direct the jury to give, or that the jury would have given, the verdict.  p. 567.

7.  CRIMINAL LAW.—*Sufficiency of Indictment.—Motion in Arrest of Judgment.—*Under §2063 Burns 1914, Acts 1905 p. 584, §192, providing that no indictment shall be questioned or judgment arrested for any surplusage or repugnant allegation, where there is sufficient matter alleged to indicate the crime and person charged, a judgment of conviction for the sale of liquor to a minor, based on an indictment stating an impossible future date as the time when the offense was committed, is not subject to a motion in arrest, since the defect is cured by the verdict on the presumption that the evidence showed that the offense was committed prior to the return of the indictment and within the period of limitation.  pp. 569, 570.

8.  INDICTMENT.—*Allegation of Time.—*The time at which an offense was committed is not material, where time is not of the essence of the offense.  p. 570.

9. CRIMINAL LAW.—*Appeal.*—*Questions Reviewable.*—*Defects in Indictment.*—Under §2221 Burns 1914, Acts 1905 p. 584, §334, requiring the court on appeal to disregard technical errors or defects which do not prejudice the substantial rights of the accused, where time was not of the essence of the crime charged and the affidavit stated an impossible future date as the time when the offense was committed, the overruling of a motion in arrest of judgment must be sustained, since the defect did not affect the substantial rights of the accused and was waived by his failure to raise the objection by motion to quash. (*Terrell* v. *State* [1905], 165 Ind. 443; *Trout* v. *State* [1886], 107 Ind. 578; *State* v. *Noland* [1867], 29 Ind. 212; and *Hutchinson* v. *State* [1878], 62 Ind. 556, distinguished.) p. 570.

10. INTOXICATING LIQUORS.—*Prosecution for Unlawful Sale.*—*Liability of Principal.*—*Sale by Bartender.*—Under §2486 Burns 1914, Acts 1905 p. 584, §575, punishing "whoever, directly or indirectly" sells intoxicating liquors to minors, a licensed saloon keeper is not criminally liable for a sale made by a bartender to a minor, where the sale was made in the saloon keeper's absence, or without his knowledge, express or implied, or without any design to evade the statute. (Prior decisions on the question of criminal liability for act of agent, and prior liquor statutes, cited and distinguished.) p. 573.

From Huntington Circuit Court; *U. S. Lesh,* Special Judge.

Prosecution by the State of Indiana against Jacob Boos. From a judgment of conviction, the defendant appeals. *Reversed.*

*C. W. Watkins* and *R. A. Kaufman,* for appellant.

*Thomas M. Honan,* Attorney-General, and *Thomas H. Branaman,* for appellee.

MYERS, J.—Indictment against appellant and another for alleged sale of intoxicating liquor to a minor. The indictment was returned February 8, 1913, and charged the alleged unlawful sale to have been made on or about December 14, 19012. There was no motion to quash. There was a motion in arrest. The errors assigned are, that the indictment does not state a public offense, and in overruling the motion in arrest, and the motion for a new trial.

This cause having originated since the enactment of 1911

(Acts 1911 p. 415, §348 Burns 1914), an assignment of
error on appeal in a criminal case that the indict-
1. ment does not state a public offense, can be of no
avail. *Hay* v. *State* (1912), 178 Ind. 478, 98 N. E.
712; *Robinson* v. *State* (1912), 177 Ind. 263, 264, 265, 97
N. E. 929. The objection made to the indictment is,
2. that it charges the commission of an offense at an
impossible time, that is, that there could be no offense
at a possible time, but so remote in the future. If the
question had been raised by a proper motion to quash below,
it would have been error to overrule it, under the following
cases, *Terrell* v. *State* (1905), 165 Ind. 443, 75 N. E. 884,
2 L. R. A. (N. S.) 251, 112 Am. St. 244, 6 Ann. Cass. 851;
*Trout* v. *State* (1886), 107 Ind. 578, 8 N. E. 618; *State* v.
*Noland* (1867), 29 Ind. 212.

The question under a motion in arrest of judgment is,
whether it has the same effect under the code, as a motion
to quash, or whether after verdict a different question arises.
We have cases under statutes prior to 1881 and the subse-
quent amendments, which hold that whatever will quash an
indictment will arrest a judgment. *Burroughs* v. *State*
(1880), 72 Ind. 334; *Arbintrode* v. *State* (1879), 67 Ind.
267, 33 Am. Rep. 86; 1 Chitty, Crim. Law (4th ed.) 442;
2 Chitty, Crim. Law (4th ed.) 662. These cases seem to be
grounded on the common law rule hereafter adverted to,
that the rules of civil procedure do not apply to criminal
actions, without having in mind the provisions of the crim-
inal code, and prior decisions, as to the applicability of the
rule in both character of causes, as well as the limitations
of a motion in arrest, under the code. The civil code
3. does not govern appeals in criminal causes, but the
criminal code provides for the application of the
rules of pleading and practice in civil actions which are
applicable, when no special provision is made in the former,
§2231 Burns 1914, Acts 1905 p. 584, §344, and expressly
adopts the definitions and terms of the civil code, so far

as applicable, and it is fair to presume that the criminal code was enacted in view of the settled principles of the common law, and the usages and general practice and pleading under the code, except as modified by the latter. *Keefer* v. *State* (1910), 174 Ind. 588, 92 N. E. 656. It is held that a motion in arrest of judgment in a criminal case, waives a motion for a new trial, in analogy to the rule in a civil action. *Turner* v. *State* (1910), 175 Ind. 1, 93 N. E. 225; *Barnett* v. *State* (1911), 175 Ind. 215, 93 N. E. 226. Prior to the declaration of the rule in *Henderson* v. *State* (1878), 60 Ind. 296, it had been the rule that the sufficiency of an indictment could not be attacked for the first time in this court, and in that case it was held that it could be done, on the ground of the analogy between the civil and criminal codes in that particular, or in the language of that case, "as in the case of complaints in civil proceedings". At common law, a motion in arrest in a criminal cause, performs the same office as a demurrer, and whatever would be fatal under the latter, would be fatal under a motion in arrest. 3 Chitty, Crim. Law (4th ed.) 662, 663; 2 Bishop, Crim. Proc. (2d ed.) §1286; Archbold, Plead. and Ev. 149. But at common law, the rule in civil cases that a complaint may be aided by a verdict, did not obtain in criminal cases. 3 Chitty, Crim. Law (4th ed.) 662. It appears also, that criminal proceedings were not aided by statutes of jeofails and amendments. 3 Blackstone, Comm. 379, 407, 439; *Wilder* v. *Gilman* (1883), 55 Vt. 503; *Ex parte Bain* (1887), 121 U. S. 1, 6, 9, 7 Sup. Ct. 781, 30 L. Ed. 849. Also, a judgment might be arrested for causes other than those appearing on the face of the record, or insufficiency of the indictment. 3 Chitty, Crim. Law (4th ed.) 663, 664; 2 Bishop, Crim. Proc. (2d ed.) §1285. By our code, the motion in arrest is limited in its scope. §2159 Burns 1914, Acts 1905 p. 584, §283.

It is a settled rule of the common law, that intendment or presumption after verdict, would cure a complaint which

would be bad on demurrer in civil actions, and with-
6. stand a motion in arrest of judgment. ''The extent
and principle of this rule of *aider by verdict* is thus
explained in a modern decision of the Court of King's
Bench. 'Where a matter is so essentially necessary to be
proved, that had it not been given in evidence, the jury
could not have given such a verdict, there the want of stat-
ing that matter in express terms in a declaration, provided
it contains terms sufficiently general to comprehend it in
fair and reasonable intendment, will be cured by verdict;
and where a general allegation must, in fair construction,
so far require to be restricted, that no judge or jury could
have properly treated it in an unrestrained sense, it may
reasonably be presumed, after verdict, that it was so re-
strained at the trial'.'' Stephen, Pleading (9th Am. ed.) 148,
citing, *Jackson* v. *Pesked* (1813), 1 M. & S. 234. See, also,
*Smock* v. *Harrison* (1881), 74 Ind. 348; *Home Ins. Co.* v.
*Duke* (1881), 75 Ind. 535. Mr. Chitty states the proposi-
tion thus, ''The doctrine upon this subject is founded upon
the common law, and is independent of any statutory enact-
ments. The general principle upon which it depends ap-
pears to be, that where there is any defect, imperfection,
or omission in any pleading, whether in substance or form,
which would have been a fatal objection upon demurrer;
yet, if the issue joined be such as necessarily required, on
the trial, proof of the facts so defectively or imperfectly
stated or omitted, and without which it is not to be pre-
sumed that either the judge would direct the jury to give,
or the jury would have given, the verdict, such defect, imper-
fection or omission, is cured by the verdict.'' 1 Chitty,
Pleading (16th Am. ed.) 705; Gould, Pleading Ch. 10, §11
*et seq.;* Bliss, Code Pleading (3d ed.) §438. In this State,
a distinction is made between a cause of action imperfectly
stated, and no cause of action stated, and this would appear
to be the common-law distinction. *Domestic Block Coal
Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N.

E. 99; *Peoria, etc., R. Co.* v. *Attica, etc., R. Co.* (1900), 154 Ind. 218, 56 Ind. 210; *Robinson* v. *Powers* (1891), 129 Ind. 480, 28 N. E. 1112; *Colchen* v. *Ninde* (1889), 120 Ind. 88, 22 N. E. 94. There are cases holding that a pleading or indictment may be cured by verdict, when it would be subject to demurrer, or motion to quash. *Domestic Block Coal Co.* v. *DeArmey, supra; Woodsmall* v. *State* (1913), 179 Ind. 697, 102 N. E. 130; *Smith* v. *Freeman* (1880), 71 Ind. 85; *Dawson* v. *State* (1879), 65 Ind. 442; *Donellan* v. *Hardy* (1877), 57 Ind. 393; *McGuire* v. *State* (1875), 50 Ind. 284. In others, it is held that a cause of action imperfectly stated, cannot be reached by demurrer, but must be reached by motion, owing to the fact that we have no special demurrer in our practice. *Baltimore, etc., R. Co.* v. *Slaughter* (1906), 167 Ind. 330, 79 N. E. 186, 7 L. R. A. (N. S.) 597, 119 Am. St. 503; *Smith* v. *Freeman, supra; Graham* v. *Martin* (1878), 64 Ind. 567. The general demurrer at common law excepted to the sufficiency of a pleading "in general terms, without showing the nature of the objection," while a special demurrer added to this a "specification of the objection." Thus a general demurrer went to the substance, and a special demurrer to the form of the pleading. Stephen, Pleading (9th Am. ed.) 140, 141.

Our code practice is closely allied to the general demurrer at common law, limited, however, to the statutory causes. These two lines of cases seem not to have noted the distinction between such defects in pleading as cannot be reached by demurrer, and do not need the aid of a verdict, and those which are insufficient to withstand demurrer and may be aided by verdict. It might be difficult as an abstract proposition, to see how a pleading insufficient on demurrer for want of facts, can be cured by verdict, but the propositions are perhaps reconcilable upon the analysis pointed out in the language of Chitty and Stephen. It has been uniformly held, prior to the enactment of 1911 (Acts 1911 p. 415, §345 Burns 1914), that the defect was not waived by

a failure to demur, and might be raised by an independent assignment of error, and yet in many cases it was held that a complaint insufficient on demurrer, and the objection not waived by failure to demur, was materially modified by the doctrine of intendment, or presumption after verdict, from which waiver arises. *Baltimore, etc., R. Co.* v. *Slaughter, supra,* and cases cited; *Peoria, etc., R. Co.* v. *Attica, etc., R. Co., supra; Nichols* v. *State* (1891), 127 Ind. 406, 26 N. E. 839; *Smith* v. *Freeman, supra; Galvin* v. *Woollen* (1879), 66 Ind. 464; *Wiles* v. *Lambert* (1879), 66 Ind. 494. Under the reasons assigned by Mr. Chitty and Mr. Stephen, the basis for these decisions seems to be well grounded.

Applying the rule here, it must be presumed that the evidence disclosed that the offense charged was committed prior to the return of the indictment, and within the period of limitation. As alleged, the date is impossible of an act, past, but we cannot avoid the fact that an offense which is charged to have been committed, was committed prior to the charge being made, and could not in fact have been in the future, or 19012. The statute (§2063 Burns 1914, Acts 1905 p. 584, §192) provides among other things, that no indictment shall be set aside or questioned, nor shall the trial, judgment, or other proceeding be stayed, or arrested, for any surplusage, or repugnant allegation, where there is sufficient matter alleged to indicate the crime and person charged. The charge that appellant did then and there unlawfully, and feloniously sell, and barter, and give away one glass of beer, etc., an act in the past tense, is clearly repugnant to the charge that it was done in December, 19012, if it is not to be treated as a clerical error, for both of which there is authority. *State* v. *White* (1891), 129 Ind. 153, 28 N. E. 425; *State* v. *Patterson* (1888), 116 Ind. 45, 10 N. E. 289, 18 N. E. 270; *Trout* v. *State* (1886), 107 Ind. 578, 8 N. E. 618. Again, by statute, the time at which an offense is committed, is not

material where the time is not of the essence of the offense, or where the time is imperfectly stated, on a motion in arrest. *Shell* v. *State* (1897), 148 Ind. 50, 47 N. E. 414; *Fleming* v. *State* (1894), 136 Ind. 149, 36 N. E. 154; *State* v. *McDonald* (1886), 106 Ind. 233, 6 N. E. 607; *State* v. *Sammons* (1884), 95 Ind. 22; *State* v. *Patterson, supra; Rubush* v. *State* (1887), 112 Ind. 107, 13 N. E. 877.

The offense charged is of a past transaction, and is that of unlawful sale to a minor, and the specific person charged is appellant. The allegation as to time is both surplusage, and repugnant to the allegation of a fact in the past, and we are required to view the matter in a common-sense manner, and to view the indictment as a whole. *State* v. *Patterson, supra; Rubush* v. *State, supra; State* v. *White, supra; Smith* v. *State* (1896), 145 Ind. 176, 42 N. E. 1019. We are bound to presume on this motion that it was shown by the evidence, that the offense was committed at some time prior to the return of the indictment, within the period of limitation, and this rule is in consonance with reason, and adjudicated cases. *Woodworth* v. *State* (1896), 145 Ind. 276, 43 N. E. 933, and cases cited; *Campton* v. *State* (1895), 140 Ind. 442, 39 N. E. 916; *Nichols* v. *State* (1891), 127 Ind. 406, 26 N. E. 839; *State* v. *Sammons, supra; Trout* v. *State, supra; Rubush* v. *State, supra.*

It is not suggested, nor can we perceive how the allegation as to time, could have prejudiced appellant's rights in the least, and we are by statute required to disregard technical errors, or defects, or exceptions to any decision or action of the court below, which does not in the opinion of the court, prejudice a defendant's substantial rights. §2221 Burns 1914, Acts 1905 p. 584, §334. We are not able to subscribe to the doctrine of those earlier cases, to the full extent to which they go, with no distinction being made between the two motions under the existing

statutes at least, when the charge necessarily shows that
it is of an act and time in the past, and where the state-
ment of a remote period in the future is necessarily repug-
nant to a thing charged to have been done, and it is suf-
ficient in this case to say, that the point is waived by a
failure to move to quash. On a motion to quash, the time
stated would be admitted to be true, and there might be
ground for quashing for that reason. But on motion in
arrest, the statute limits the causes. Time is not of the
essence of the offense here, and a public offense is com-
pletely charged without reference to the time stated, and the
latter is surplusage, and also repugnant to the other charges
in the indictment. Our conclusions are not in conflict with
*Terrell* v. *State, supra,* and the cases there cited, in which
the question arose on motion to quash, or when restricted
to motions in arrest of judgment, but we are constrained to
take the view that a defendant cannot risk the chance of
an adverse verdict which could only be found on evidence
of the commission of a public offense, well charged, except
as to time, within the period of limitation, and then raise
a question which goes neither to jurisdiction, nor the lack
of a public offense, and could not possibly prejudice any
substantial right, and that it should be decreed a personal
right, which he may waive, and does waive by so doing.
It is to be observed that *State* v. *Noland, supra,* arose at
a time when we had no such statutes as we now have in
§§2063, 2159 and 2221, *supra,* and these provisions mark
a wide departure in the practice. *Hutchinson* v. *State*
(1878), 62 Ind. 556, is distinguishable on the same grounds
as *State* v. *Noland.* These cases do not mark the distinction
in later cases, which to our minds are supported by the
better reason, where there is jurisdiction, and an offense is
charged, and time is not of the essence of the offense.
*Bohall* v. *State* (1911), 176 Ind. 566, 570, 96 N. E. 576;
*Henning* v. *State* (1886), 106 Ind. 386, 392, 6 N. E. 803,
7 N. E. 4, 55 Am. Rep. 756; *State* v. *Emmett* (1869), 23

Wis. 632; *State* v. *Claudle* (1868), 63 N. C. 30; *State* v. *Blaisdell* (1869), 49 N. H. 81; *Commonwealth* v. *Miller* (1881), 79 Ky. 451, and notes; *McMath* v. *State* (1875), 55 Ga. 303; *Connor* v. *State* (1858), 25 Ga. 515, 71 Am. Dec. 184; *Williams* v. *Commonwealth* (1892), 13 Ky. L. R. 893, 18 S. W. 1024. The motion in arrest was properly overruled.

The indictment charges an unlawful sale, barter or giving away of intoxicating liquor by appellant, and Oren D. Brown to Edward Hunter, a person under twenty-one years of age. One Emley testified to being in appellant's saloon December 15, 1912, but did not know that appellant was there; that he did not see Brown there, did not notice, if he was there; saw Hunter drink some beer there, and did not know how many bartenders were there. Hunter testified that he was 18 years old at the time he was in the saloon, knows appellant; that he was in the saloon of appellant with Emley; did not know any of the bartenders, and could not say whether appellant or Brown was there, and does not remember any of the bartenders, or those who were at the bar, and that he bought and paid five cents for intoxicating liquor there; that it was beer; that he could not tell from whom he bought it, that he knew Brown; did not know whether he was intoxicated; does not recall distinctly his testimony before the grand jury, or whether he testified there that Boos was there, or whether he asked that some one "give him a glass of beer". Brown testified that he knew Hunter; that he was working in appellant's saloon in December, 1912; that Hunter was not in the saloon to his knowledge in December, 1912, and that he had never sold or served Hunter beer; that appellant was the proprietor, and he, and one Rose, and appellant attended the bar; does not recall ever seeing Hunter there, or how many persons would drink there each day; and never knew Hunter to be there, or be refused a drink. Rose testified that he never sold Hunter beer, and that none

was sold to Hunter in that saloon in his presence; that he did not know Emley, and was there as bartender in December, 1912. Appellant testified that he did not know Hunter or Emley; never sold either of them anything. Brown was acquitted, appellant convicted.

The court instructed the jury as follows, "The court charges you, that in order to warrant a conviction of one engaged in the sale of intoxicating liquor, for having made an unlawful sale, it is not essential that the proof should show the defendant to have made the unlawful sale in person, but the proprietor of the saloon may properly be held responsible for the act and conduct of his agents, done and performed by them, while conducting the business for their principal. The proprietor may even be held responsible for acts and sales of his clerks and agents done and performed in the absence of the proprietor, and of which the proprietor may have no personal knowledge. In this case at bar, the doctrine of the principal being held for the acts of his agent done and performed by the agent while conducting the business for his principal, would have no application to the defendant Brown, for he being only a clerk or agent for Boos, could not be held responsible for any sale not made by him personally." The court declined to give an instruction tendered by appellant, as follows, "The indictment charges that the sale of liquor described therein was made by Oren D. Brown and Jacob Boos to Edward Hunter. In order to secure a conviction, and before the jury can find the defendant Boos guilty, it must be shown beyond a reasonable doubt, that the liquor was sold either by said defendant Boos, or in his presence, or under such circumstances that he must have known that the sale was made, and if there is no such proof, the jury should find the defendant Boos not guilty."

The issue of law is squarely presented under these two instructions, with the testimony of two witnesses that Hunter drank beer in appellant's saloon, and by the latter, that he

paid five cents for it, as against the testimony of three persons, that neither had sold to him. Appellant's position is, that a licensed saloon keeper cannot be held liable where his bartender sells to a minor, where the sale is made in his absence, or without his knowledge, express or implied, without subterfuge, artifice, or design to evade the statute. The contention of the State is, that as there can be no legal sale to a minor, knowledge or intent of the proprietor, are not elements of the offense, and as the act is prohibited by any one, the proprietor of a licensed saloon is put in the same category as any other person whose agent does an unlawful act while engaged in the course of his employment or agency. That he is personally entrusted with license, and that it is the policy of the statute that he being alone licensed, and responsible for the conduct of the business, what he does by another he does by himself by necessary implication, by virtue of the statute, and of the language, "whoever, directly or indirectly sells", etc. §2486 Burns 1914, Acts 1905 p. 584, §575. While penal statutes are to be strictly construed, they are not to be so strictly construed as to defeat their purposes and objects, by shifting responsibility from the bounden and responsible principal, to the irresponsible, or indifferent agent.

It cannot be gainsaid, that during the greater portion of the judicial history of this State the rule of construction contended for by appellant, has obtained. Other jurisdictions are about equally divided on the question, controlled in many instances, however, by the particular statute. Ordinarily, crime is personal. An act may be impersonal, and yet be a crime by statute from considerations of public policy, graduated according to conditions or circumstances, conspicuous instances of which are in gradations from murder in the first degree to involuntary manslaughter, and in prohibited things such as discharging weapons, by which unintentional injuries are inflicted, and generally in committing an unintentional crime, in the commission of a

prohibited act. On the one hand, it would seem a doubt-
ful proposition to say that one who has a license which
makes the business lawful, can be guilty of a crime of which
he has no knowledge, and which may be committed con-
trary to his express direction, though by one in his employ,
in the conduct of the business. On the other hand, he
engages in a business in which there is no natural right,
and subject to many limitations, by virtue of a statute
which confers such right upon him personally, by virtue
of his, supposedly at least, being a proper person to exercise
the right. If he must, in carrying on such business, employ
agents, should he not be chargeable with their acts? True,
he may not authorize them to do an interdicted thing, as
selling to a minor, or one intoxicated, or in the habit of
becoming intoxicated.

Much plausibility in argument in support of the con-
tention of the State is to be found in adjudicated cases to
the point that intent and knowledge on the part of the
licensed vendor of intoxicating liquors, are equally immate-
rial, on the ground of the business being so far personal
to the licensee, that he should be held responsible as a matter
of public policy, for the acts of the agents he may select in
carrying it on, and the further ground that in misdemeanors,
all are principals. Some of the cases are the following:
*People* v. *Lundell* (1904), 136 Mich. 303, 99 N. W. 12;
*State* v. *Burchinall* (1832), 2 Harr. (Del.) 528; *Lehman* v.
*Dist. of Columbia* (1902), 19 App. Cas. D. C. 217, and cases
cited; *McCutcheon* v. *People* (1873), 69 Ill. 601; *People*
v. *Roby* (1884), 52 Mich. 577, 18 N. W. 365, 50 Am. Rep.
270, and cases cited; *Carroll* v. *Maryland* (1885), 63 Md.
551, 3 Atl. 29; *People* v. *Longwell* (1899), 120 Mich. 311,
79 N. W. 484. In this case, however, the act extended to
any person "who himself or by his clerk or agent" sells,
etc. *Commonwealth* v. *Emmons* (1867), 98 Mass. 6; *Loeb*
v. *Georgia* (1885), 75 Ga. 258; *State* v. *Kittelle* (1892),
110 N. C. 560, 15 S. E. 103, 15 L. R. A. 694, 28 Am. St.

698; *State* v. *Hartfiel* (1869), 24 Wis. 60, and cases cited; *Dudley* v. *Sautbine* (1878), 49 Iowa 650, 31 Am. Rep. 165; *Ulrick* v. *Commonwealth* (1869), 6 Bush. (Ky.), 400; *State* v. *Cain* (1876), 9 W. Va. 559, and cases cited; *Whitton* v. *State* (1859), 37 Miss. 379; *State* v. *Constantine* (1906), 43 Wash. 102, 86 Pac. 384, 117 Am. St. 1043. The insistence of the State that the language of the act, "whoever, directly or indirectly, sells," etc., was intended to include agents, upon the general doctrine that that which one does by an agent he does by himself, is not without much force, and has the direct support of *State* v. *Kittelle, supra,* and as a matter of public policy ought to be the rule, and were it a case of first declaration, apart from any disclosed public policy, we should be constrained to so hold, but we cannot ignore the general history of legislation on the subject in this State, or the adjudicated cases, neither of which have evinced such public policy. From the earliest judicial history of the State the strong tendency, even with respect to sumptuary laws, has been to make crime personal. *Penny-baker* v. *State* (1831), 2 Blackf. 484; *Hipp* v. *State* (1839), 5 Blackf. 149, 33 Am. Dec. 463; *Lauer* v. *State* (1865), 24 Ind. 131; *Hanson* v. *State* (1873), 43 Ind. 550; *O'Leary* v. *State* (1873), 44 Ind. 91; *Thompson* v. *State* (1874), 45 Ind. 495. It has not been thought up to this time, that the language of the statute was intended to go further by the phrase "directly or indirectly" than to reach cases of sale by some mechanical or partly mechanical artifice, subterfuge or evasion of the direct act, of which the proprietor could scarcely be ignorant. Such cases are, *Rigrish* v. *State* (1912), 178 Ind. 470, 99 N. E. 786; *Walters* v. *State* (1910), 174 Ind. 545, 92 N. E. 537; *Topper* v. *State* (1889), 118 Ind. 110, 20 N. E. 699. It is scarcely to be doubted that these cases go far in modification of the common law rule as to crime being personal, but in view of the facts disclosed, are well within the reason of the rule, and this same thing is true as to *Groff* v. *State* (1909), 171 Ind. 547, 85

N. E. 769, 17 Ann. Cas. 133, upon which the State largely relies. In the latter, the conviction was not for selling oleomargarine, but in substituting it for dairy butter, which was called for by the purchaser, and it was the substitution, which was interdicted by the statute. The proprietor had oleomargarine for sale, and his agent was authorized to sell it, and it was held that criminal responsibility rested upon him for the unlawful substitution. Here it is argued that appellant had intoxicants for sale, and sale to a minor is prohibited, as much as the substitution of oleomargarine for dairy butter, and it may be difficult to distinguish the cases on principle. The Walters case and Rigrish case are distinguishable under the facts in those cases. We have long had statutes interdicting sale of intoxicants to minors, still it has been the acknowledged policy to submit to the jury the question of appearance and opinions as to the age of the party to whom a sale is made, as going to the good faith of the seller, as a defense. *Mulreed* v. *State* (1886), 107 Ind. 62, 7 N. E. 884; *Taylor* v. *State* (1886), 107 Ind. 483, 8 N. E. 450; *Benson* v. *McFadden* (1875), 50 Ind. 431; *Ross* v. *State* (1888), 116 Ind. 495, 19 N. E. 451; *Kreamer* v. *State* (1886), 106 Ind. 192, 6 N. E. 341; *Hunter* v. *State* (1885), 101 Ind. 241.

There can be no good reason, aside from the public policy involved in the difference in grade of the offense, in permitting a defense of this kind, and denying it with respect to rape upon females, under the age of consent, yet it is the acknowledged public policy. The same rule was applied under statutes with respect to sales to persons in the habit of becoming intoxicated. *Farrell* v. *State* (1873), 45 Ind. 371. And under the statute prohibiting sales to persons in the habit of becoming intoxicated, it has been held that the person to whom the sale is alleged to have been made, must be shown to be in the habit of becoming intoxicated, and applied the former rule, as to defenses of good faith

in the absence of the statutory notice. *Miller* v. *State* (1886), 107 Ind. 152, 7 N. E. 898; *State* v. *Smith* (1890), 122 Ind. 178, 23 N. E. 714; *Commonwealth* v. *Stevens* (1891), 153 Mass. 421, 25 Am. St. 647, 26 N. E. 992, 11 L. R. A. 357. In the Smith case it was held that notice to the proprietor in writing must be shown, and that notice would not be imputed by an averment that a copy of the notice was left at, or in the saloon, or that it would be imputed to an employe, but, that if the employe had notice, or knowledge of a statutory notice to the proprietor, his conviction of a sale would be upheld.

The statute with respect to sales to persons in the habit of becoming intoxicated is, that "whoever, directly or indirectly, sells," etc., §2485 Burns 1914, Acts 1905 p. 584, §574, but it has not we believe been understood before the Groff case, since *Pennybaker* v. *State, supra,* which held the contrary, that the proprietor could be convicted for a sale by his employe, done without his knowledge or consent. By the act of 1852 (2 R. S. 1852 p. 435, §26, 2 G. & H. p. 465, §26), sale to a minor by any person "by himself or agent," was penalized. By the act of 1853 (Acts 1853 p. 87), this law was repealed. In 1859 (Acts 1859 p. 202, §11, 1 G. & H. p. 617, §11), the interdiction was if "any person shall," etc. By the act of 1873 (Acts 1873 p. 154, §6), the prohibition went to a sale by any person "by himself or agent," and under that act, conviction of the proprietor for sale by his agent, was denied. *Hanson* v. *State, supra; Thompson* v. *State, supra.* And the same as to a sale to one in the habit of becoming intoxicated, under the same section. *O'Leary* v. *State, supra.* By the act of 1875 (Acts 1875 [s. s.] p. 55, 1 R. S. 1876 p. 872, §13) the interdiction was "If any person shall sell, barter or give away directly or indirectly," etc., with the position of the adverb changed in the act of 1881 (Acts 1881 [s. s.] p. 174, §2094 R. S. 1881), to read "Whoever, directly or indirectly," etc., and this language is followed in the act of 1905, §2486,

*supra.* It appears that notwithstanding the broad provisions of the acts of 1852 and 1873, *supra,* with the construction put upon the latter by the court, subsequent legislation adopted statutes less strong, with that construction before it, thus practically adopting that construction. *State v. Ensley* (1912), 177 Ind. 483, 489, 97 N. E. 113, and cases cited. In view of this legislative history, it would appear that the disclosed public policy of the acts of 1852 and 1873, *supra,* which would appear to have authorized conviction of a principal, irrespective of his knowledge, had been abandoned, and return made to the previous policy as declared by this court, and adhered to in the cases arising under the act of 1873, *supra,* notwithstanding its broad provisions.

Recurring to the Groff case, it is to be observed that the court was not in the situation with respect to the pure food law, or with respect to restrictions of the drug trade, that this court is confronted with, and that the opinion in that case travels on the basis of substitution in the sale of something other than dairy butter, an adulteration, to wit: an article defined by the statute as adulterated, that is, that it was a fraud on the purchaser, in substituting an adulterated article for the genuine article called for by the purchaser. The statute is aimed at fraud, and for the protection of the public health. Here, however, we have a statute in aid of morals, and perhaps also of health, that is, one prohibition is as to inanimate things, and the other respects persons, and in the latter the crime, while against the person, is not for fraud upon him, but an affirmative act in violation of a declared public policy. The reason for the statute may be as potent in one case as in the other, but the crime in one instance is against the person, for fraud upon him, and in the other against the public, and its policy, and with respect to the latter, the like public policy of this State seems to require that guilt shall be personal, or at least involve knowledge or intent, as necessary elements

of the crime against it, though intent is not an element of the statute by its terms, yet there is much reason, as well as authority in other jurisdictions for applying a liberal rule in construing such an act.

*State* v. *Kittelle, supra,* is also relied on by the State in the matter of the construction of the words "directly or indirectly," in which the words were held to include agents, in an opinion of learning and logical reasoning, but we are confronted with a history which appears to have impressed this court in the past, and the legislation of the State, with a different view of the intent in the use of those words. The leading case holding a liability of the proprietor, is *People* v. *Roby, supra,* involving a negative, rather than an affirmative act; but many cases are there collected by the learned Justice Cooley, in support of liability for an affirmative act of an agent. See, also, *St. John* v. *New York* (1906), 201 U. S. 633, 26 Sup. Ct. 554, 50 L. Ed. 896, 5 Ann. Cas. 909. But it appears to us to lie with the legislative, rather than the judicial branch, to declare the public policy contended for by the State, though if it were a primary question for the court, as a matter of construction, it could be upheld upon very rational grounds. We are constrained to the view that the judgment must be reversed on account of the instructions, and a new trial granted, and it is so ordered.

NOTE.—Reported in 105 N. E. 117. As to illegal sales of intoxicating liquors to minors, see 12 Am. St. 354. As to criminal liability for sale of liquor to minors by partners, agents or servants, see 41 L. R. A. 666. As to the validity of an indictment or information fixing the commission of a crime at a future or impossible date, see 6 Ann. Cas. 854; Ann. Cas. 1913 B 1043. See, also, under (1) 12 Cyc. 812; (2) 22 Cyc. 318; (4) 12 Cyc. 743.